### . R. A. LOGAN v. G. P. MEADS ET AL.

#### Decided June 16, 1906.

**1.—Boundary—Conflicting Testimony—Peremptory Charge.**

Where witnesses differed in their testimony as to the location of a boundary line it was error for the court to instruct a verdict for the plaintiff for the land described in his petition.

**2.—Trespass to Try Title—Joint Owners.**

In trespass to try title, one or more of several joint owners may recover the entire tract against a stranger to the title.

ON REHEARING.

**3.—Adverse Possession—Definition—Charge.**

Our statute sufficiently defines the character of the adverse possession necessary to support the ten years statute of limitation, and it was error, under the facts of this case, for the court in its charge to undertake to amplify the terms which the Legislature has carefully defined.

**4.—Adverse Possession—Claim of Right—Charge.**

It was error for the court, under the testimony in this case, to charge the jury in effect that if the defendant, at the time he went into possession of the land in controversy, had no intention of claiming the same by limitation, and that he had no such intention until a later date—less than ten years before suit filed—and that prior to said date, although holding the land, he was not doing so in repudiation of the right of the owner, then there would be no adverse possession within the meaning of the law; because, if the defendant claimed the land in controversy for the statutory period adversely, within the meaning of the statute, it was entirely immaterial that he made no claim thereto by "limitation," "at the time he went into possession," or at any other time.

Appeal from the District Court of Archer County. Tried below before Hon. A. H. Carrigan.

*Matlock, Miller & Dycus* and *Jno. Purcell,·* for appellant.

*Spoonts, Thompson & Barwise,* for appellees.

CONNER, CHIEF JUSTICE.—Our conclusions under the first assignment are that the court did not commit reversible error in peremptorily instructing the jury to find for the plaintiff unless they found for the defendant under his plea of limitation, on the first proposition. For at the time of the trial it seemed undisputed, and appellant himself acceded to the contention for several years prior to the trial, that the land described in appellees' petition was in fact a part of survey No. 1. He rendered and paid taxes upon it as such, and it was in effect so assumed in appellant's requested special charge No. 5. So that to this extent

no error was committed in relieving appellees of the burden of proof by the peremptory instruction.

We think, however, that the peremptory instruction was erroneous, as asserted in the third and fourth propositions under the first assignment of error, insofar as it assumed that all of the land described in appellees' petition was a part of survey No. 1. There was a conflict in the testimony of the surveyors in fixing the east line of survey No. 2. According to the testimony of surveyor Hart, the east line of survey No. 2 was but 642 varas west of the fence described in the testimony. Surveyor Henderson makes this distance 675 to 730 varas, while by the instruction the jury were in effect arbitrarily directed to return a verdict for the appellees for the entire 678 varas described in the petition, unless they found for appellant by limitation. We think it should have been left to the jury under appropriate instruction to determine from the evidence and fix the dividing line between the surveys. The court could have thus determined the precise amount of the land owned by appellees that was within appellant's enclosure. The jury might have adopted Hart's testimony; and we hence conclude that the judgment must be reversed because of the error noted, unless appellees, as we think they may do, within ten days remit in this court recovery of all land described in their petition lying west of a dividing line between the two surveys drawn from a point 642 varas west of the north end of said fence.

In the third and fifth assignments the fifth clause of the court's charge is attacked, but in view of the decisions cited in appellee's brief, we feel unable to say that it is affirmatively erroneous, though it may be doubted whether the statute on the subject of adverse possession should be thus enlarged. Nor do we feel satisfied to say that the emphasis given to the phase of the case therein presented authorizes a reversal. That appellant had within his actual enclosure and possession the land or a part of the land in controversy is undisputed. The crucial question seems to have been whether such possession was adverse—hostile to the true owner—and the court was evidently but endeavoring to point out and make clear to the jury this issue. That in doing so he may have been somewhat more prolix than was necessary should not be ground for reversal, in the absence of a showing that the jury were misled to appellant's prejudice, and this we feel unable to affirm. The assignments mentioned are accordingly overruled.

While we would perhaps have felt better satisfied had appellant's special charge No. 5 been given, we have finally concluded that its rejection hardly justifies a reversal, inasmuch as the court's charge was sufficiently comprehensive on the same subject. For instance, in the second paragraph the jury are plainly instructed to find for appellant if they believe his possession was adverse. By this charge the jury must have understood that it was utterly immaterial whether appellant claimed the land as a part of survey No. 1 or under the mistaken belief that it was a part of survey No. 2 purchased by him of George Cranmer. Such, also, is the plain import of other paragraphs of the court's charge, so that we think the fourth assignment must be overruled.

The second, seventh, eighth and ninth assignments are all overruled

as immaterial. It is undisputed that appellees were at least joint owners of the greater part of the J. Poitevent survey No. 1. They hence were undoubtedly entitled to recover against all persons not showing an affirmative right or interest in said survey. The fact, therefore, that appellees failed to show a complete chain of title to all interests embraced in survey No. 1, and that the court may have erred in permitting appellees to use in evidence the records specified in the seventh, eighth and ninth assignments, is of no consequence.

Save as modified by what we have said in disposing of the first assignment of error, we think the burden of proof was upon appellant to establish his plea of limitation, and by reference to page 54 of the transcript it will be seen that the court expressly instructed the jury to disregard contents of letters read in the presence of the jury. The sixth and tenth assignments are hence likewise overruled.

The foregoing conclusions briefly dispose of all assignments, and in accordance therewith it is ordered that the judgment be reversed and the cause remanded for the error pointed out in disposing of the first assignment, unless appellees file remittitur as stated in that connection, in which event the judgment will be affirmed.

*Reversed and remanded, unless remittitur is filed.*

### ON MOTION FOR REHEARING.

Upon reconsideration of this case we have become convinced that the motion for rehearing should be granted and the judgment reversed for the errors pointed out in the third and fourth assignments in appellant's original brief.

In the third assignment objection is made to the fifth clause of the court's charge on the ground that it "gave undue prominence to the character of the possession and appropriation required by piling, one upon another, a number of adjectives which were misleading and erroneous, and by further instructing the jury that they must constitute a disseizing of the owner." The charge objected to is as follows: "In order for the defendant Logan to be entitled to claim the land in controversy under his plea of ten years limitation his possession must have been visible, distinct, notorious, continued and hostile for the full period of ten consecutive years prior to the filing of this suit. It must have been an actual, open and peaceable appropriation of the land under a claim of right inconsistent with the rights of the true owner, and must disseize the owner, and the claim must be for the land described in plaintiffs' petition."

Our statutes carefully define the essential elements constituting title by limitation. Article 3343 declares that: "Any person who has the right of action for the recovery of any lands, tenements or hereditaments against another having peaceable and adverse possession thereof, cultivating, using or enjoying the same, shall institute his suit therefor within ten years next after his cause of action shall have accrued, and not afterward." Article 3347: "Whenever in any case the action of a person for the recovery of real estate is barred by any of the provisions of this chapter the person having such peaceable and adverse possession shall be held to have full title, precluding all claims." The

peaceable and adverse possession mentioned in the articles quoted are then defined as follows: " 'Peaceable possession,' within the meaning of this chapter, is such as is continuous and not interrupted by adverse suit to recover the estate." Article 3348: " 'Adverse possession' is an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another." Article 3349.

Why, then, should it be necessary for the court in his charge to amplify terms which the Legislature has been so careful to define? That the court has done so in the case before us is perfectly apparent, and we can but think it was harmful when the quoted charge is read in the light of the evidence. We will not undertake to set it out, for it is voluminous. But it brings the conviction that for many years appellant, and others, supposed that the land in controversy was a part of the survey owned by him. It was so enclosed, and so purchased, occupied and claimed by appellant, according to his testimony, from March, 1889, to January, 1900 or 1901,—more than ten years prior to the institution of this suit. It seems undisputed that his possession was "continuous and not interrupted by adverse suit," and therefore "peaceable" within the meaning of the statute. There is some testimony tending perhaps to show that some five or six years after appellant's purchase and entry, the owners of survey No. 1, adjoining appellant's survey No. 2 on the east, claimed that a part of said survey No. 1 was within appellant's enclosure and that appellant acquiesced in the claim by paying lease money therefor. But this testimony is by no means conclusive and is positively denied by appellant. The least that can be said of it is that there is nothing therein requiring an instruction to the jury that appellant's claim must have been "notorious" and his possession such as to "disseize" the owner. The terms of the statute, in our judgment, would have sufficiently and more appropriately applied to the facts, and the enlargement thereof by the court was very probably prejudicial.

The case of Beall v. Evans, 1 Texas Civ. App., 446, so much relied upon by appellees, we think distinguishable from the one before us. That was a case of a contest between tenants in common. In such cases the relation between such joint owners is in the nature of a trust relation. The possession of one is the possession of all. The owner of a part may recover the whole as against all the world, save a cotenant or coowner, upon proof of ownership of such part alone. The fact of his possession with claim of right is not deemed inconsistent with the right of his cotenant unless he holds and claims to the exclusion of such cotenant. And therefore, as stated in the decision referred to and in cases cited in support thereof, before one tenant in common of land will be awarded the interest therein of a cotenant, on the ground of limitation, his claim and possession for the statutory period must amount to a repudiation of the trust relation, and such as is sufficient to give his cotenant notice that he claims and is possessed of the whole to the exclusion of such cotenant. But, as before stated in effect, we see nothing in this case requiring emphasis to be given to the terms of the statute defining adverse possession, and we think the court erred in doing so.

In the fourth assignment complaint is made of the court's refusal to

give the following special charge, viz.: "Gentlemen of the jury: If you find that the defendant took possession of the land in controversy, under the mistaken belief that the east boundary line of the land he had purchased, was as the east fence built by George Cranmer, and that he kept and maintained peaceable, adverse and exclusive possession of the land up to said fence under such mistaken belief for 10 years prior to the institution of this suit, intending all the while to claim all of the land in controversy as a part of his said section, and that when he found out that there was doubt as to where the line was, intended to and did claim said land by limitation from that time, and that he has all the time claimed all of the land up to the east fence against the owner, then you will find for the defendant, although you may believe that defendant did not know that he had any part of the Poitevent survey No. 1, inside of his enclosure at the time he took possession."

In order to show the importance of this charge to appellant's rights, we will set forth a part of his cross examination and a special charge, given at appellees' request, viz.: " . . . Q. Was it your intention at the time you bought this land and went into possession of it, to claim any land in that enclosure by limitation? A. I did not know anything about limitation at the time I bought it. Q. Please answer the question Yes or No—I will ask you again—Did you at the time you bought the 640 acres of land from Cranmer and went into possession of the land, did you or not intend to claim any land in that pasture by limitation—That is a plain question, and I would like to have you answer Yes or No, or say you don't know? A. I intended to claim the land I had bought. Court: Just answer the question. Q. Did you or not intend to assert any claim for any land in that enclosure by limitation? A. Not at the time, I did not. Q. Not at that time? A. No, sir. Q. When was it that you first made up your mind that you were going to claim by limitation any land in that pasture? A. When Webb came to me to pay lease on it. Q. What year? A. 1901 I think—maybe 1902. . . ." (Tr. pp. 11, 12.) "—— Q. Now then I want you to tell the jury what was the first year and when was the first year that you ever rendered any part of the Poitevent survey No. 1 in controversy, to the tax collector of this county for taxes? A. I could not remember—the tax rolls would have to show that. Q. Is not it a fact, that it was in the year 1900? A. I am not positive about that—somewhere about that. Q. It was less than four years at any rate." A. That is about the time that I think that I ascertained that there was some land there. Q. That was not what I was asking you—it is true, the first time you ever rendered for taxes any land out of the Cranmer land, was some four years ago? A. About that . Q. In other words, when you made up your mind to claim this land by limitation—then it was you began to render it for taxes and pay taxes—Is it not true? A. Yes, sir, about then. . . ." (Tr. pp. 14, 15.)

The charge given at appellees' instance is as follows: "Gentleman of the jury: If you find and believe from the testimony that the defendant, R. A. Logan, at the time he went into possession, had no intention of claiming by limitation that portion of J. Poitevent survey No. 1, which was enclosed with the Cranmer section, and that he had no such

intention to so claim the land by limitation until during the time of the Webb lease, or about the year 1901; and that prior to this date, although holding the land, was not doing so in repudiation of the right and ownership of the owners of said land—then, there would not be adverse possession within the meaning of the law, and your verdict should be for the plaintiffs." (Tr. p. 7.)

In view of this cross examination and of the instruction given, it seems to us that appellant was at least entitled to have the jury instructed as sought in the refused charge. It embodied the substance of appellant's testimony in chief, and was nowhere else so clearly presented. If appellant claimed the land in controversy for the statutory period "adversely," within the meaning of the statute, it is entirely immaterial that he made no claim thereto "by limitation," "at the time he went into possession"; or at any other time. (Daugherty v. New York & T. Land Co., 61 S. W. Rep., 947; Hand v. Swann, 1 Texas Civ. App., 244; Cartwright v. Pipes, 9 Texas Civ. App., 311; Jayne v. Hanna, 51 S. W. Rep., 296; Bisso v. Casper, 14 Texas Civ. App., 19.)

Judgment is reversed and cause remanded.

*Reversed and remanded.*