CAMPBELL BANKING CO. v. HAMILTON.
(No. 8074.)

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 16, 1915.)

1. BOUNDARIES ☞43 — JUDGMENT — REQUISITES—CERTAINTY.

In a suit to determine disputed boundaries to land, where it appeared that under judgment in favor of plaintiff for the possession of the land an officer could not put him in possession on account of indefiniteness, the judgment reading "beginning at the southwest corner of survey No. 1810," etc., while not a single corner of such survey was actually fixed by a monument, its location being so indefinite that the results of two surveys to locate survey 1810 were in hopeless conflict according to the testimony of the surveyors who had made them, the judgment was ineffectual as not determining the issues involved in the suit.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. § 208; Dec. Dig. ☞43.]

2. APPEAL AND ERROR ☞301 — OBJECTIONS NOT RAISED BELOW.

The fundamental objection to a judgment that it does not determine the issues of the suit is not waived, though not raised on motion for new trial.

[Ed. Note.—For other case, see Appeal and Error, Cent. Dig. §§ 1743, 1753–1755; Dec. Dig. ☞301.]

Appeal from District Court, Archer County; Edgar Scurry, Judge.

Action by Geo. B. Hamilton against the Campbell Banking Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Fitzgerald & Cox, of Wichita Falls, and L. C. Counts, of McAlester, for appellant. W. E. Forgy, of Archer, and Kay & Akin, of Graham, for appellee.

BUCK, J. This suit was brought in the form of trespass to try title, but it is agreed by the counsel for appellant and appellee that there is involved a question, merely, of disputed boundary. Appellant owned the north one-half of section 1810, T. E. & L. Company survey, and appellee the south one-half. The location of the division line between their respective holdings was the issue sought to be determined by the suit. The cause was tried before a jury on special issues submitted, and plaintiff recovered judgment, which judgment, in part, is as follows:

"It is therefore considered, ordered, adjudged, and decreed that the plaintiff, Geo. B. Hamilton, do have and recover of and from defendant, the Campbell Banking Company, a firm composed of W. T. Campbell and R. T. Campbell, the following described tract and parcel of land situated in the counties of Archer and Young, in the state of Texas, to wit: Being 168.78 acres of land in the name of Texan Emigration & Land Company located by virtue of certificate No. 1810, and known as survey No. 1810. The whole of said survey being described by metes and bounds as follows: Beginning at the southwest corner of T. E. & L. Company survey No. 1810, the same being also the northwest corner of T. E. & L. Company survey No. 1809; thence north, 1,419 varas, to corner; thence east, 1,344 varas, to corner; thence south, 1,419 varas, to corner, being the southeast corner of survey No. 1810 and the northeast corner of survey No. 1809; thence west, 1,344 varas, to the place of beginning, and containing three hundred thirty-seven $^{56}/_{100}$ (337.56) acres of land—for which south one-half of said survey 1910 the plaintiff may have his writ of possession."

[1] It is claimed by appellant in the first assignment of error that this judgment decides nothing, and does not determine the disputed issue, and that the officer, under this judgment, could not put appellee in possession of the land described without assuming judicial functions to ascertain the boundary line and without locating the beginning point in said judgment mentioned, and which beginning point is not located on the ground, and was one of the disputed points in the trial of said cause. This specification we believe to be well taken. Wilhelm v. Bauman,

133 S. W. 292; Craig v. Mings, 144 S. W. 316.

Surveyor C. W. Henson, witness for appellee, plaintiff below, testified, in part, as follows:

"I began at the northeast corner of T. E. & L. Company 1398. There was a live corner there, a post oak. From there I went west 1,-344 varas, and there found a corner; yes, it was a live corner, as is called for in the field notes. I next went on 1,344 varas west, where I found another live corner, as called for in the field notes. I next went on west 1,344 varas, where I found another live corner. Then I continued on west for three surveys, each one being 1,344 varas east and west. I passed two corners where there was nothing to indicate that there was a corner; there was no live corners there. They would be the northwest corner of survey No. 1377 and northwest corner of No. 1383. I did not find anything at the northeast corner of survey No. 1910; nothing to indicate a corner. Yes, sir; I looked, and there was nothing there. From there I went south 672 varas—one-half of a survey. No, sir; I did not run west from the northeast corner of 1810 at that time. I ran south from there for one-half of survey. I did not run the north line of 1810 clear through, at this particular time, but did run it through at another time. I ran a line straight west from the point 672 varas south of northeast corner of 1810 to the west line of said survey No. 1810. I did not run the west line of survey 1810 at that time, but did run it later on. The corner I put down 672 varas south from the northeast corner of survey No. 1810 was 122 varas north of the partition fence between Mr. Hamilton and Campbell Banking Company. Yes, I later run the west line of survey 1810, and the corner I made, 672 varas south of the northwest corner of same, was 116 varas north of Campbell's fence. The corners made by me were 122 varas on the east, and 116 varas on the west, north of the partition fence between Mr. Hamilton and Mr. Campbell. And the strip between these corners and the partition fence would be 1,344 varas long. If my work is correct, then Mr. Campbell would have this strip 1,344 varas long, and 122 varas wide on the east side and 116 varas wide on the west side, more land than the north 160 acres of survey No. 1810. In running these lines, I run on a variation of 9.45. I run from the northeast corner of survey 1398 to the northeast corner of survey No. 1810 on the variation of 9.45. I got this variation from these line corners over on the east where I commenced. I found four of those corners in line, and the variation remained the same in all of them. I continued west on the same variation, on this line. * * *

"Ordinarily, the surveyor, in running out this T. E. & L. Company land, did not run around a survey, but just run the base lines and did not run the lines between them. He would run the base lines and then double back, running 1,344 varas. If he was running west, then he would double back east 1,344 varas, and so continue, running the ends only. Mr. Campbell's north fence on survey 1810 is 13 varas south of the line I run for the north line of said survey. There is a road or lane for a part of the way along the line I run until I got to 1810. There is no road on the north boundary line of 1398, nor 1397, nor 1389, but about two surveys I made further there is a lane on the north side. There is only one fence on the north of 1810, but there is a road, and Mr. Campbell's fence is on the north side of the road. There is no jog in the fence. Mr. Campbell's pasture is on one side, and Dick Campbell's pasture is on the other side. The line I run is about 13 varas north of the fence on the east side and a little closer on the west side. The fence bears away

from the true line a little bit. I would say about 3 varas to the survey is the variation. At the northeast corner of 1373 it would be about 10 varas off. What I have stated before is all the surveying I have done over there, except that I ran down to the south side of Mr. Gilcrease's survey, which is 160, and which lies south of Dr. Hamilton's, and I did some surveying next day, over on the 1,300 tier of blocks. * * * Yes, if my work is correct, there is an excess of 75 varas overplus in survey No. 1810. That would be 17.8 acres of land, excess. Yes, I have recently surveyed to the north line of survey 1810. The way I did it was to go over to 1811's northwest corner. This survey lies just north of 1810, and there are two corners over there; two stone corners, one 112 I believe, or 116 varas north of the other. At the south one of these corners which was 112 varas south of the other one, I found a stone in the ground; there were no bearing trees for that corner. The only other evidence of it being a corner was an elm tree called for in the field notes, but it did not fit the calling. There was no TEL mark on it.

"Q. Did the full distance from this marked corner take you to the Campbell fence? Is the Campbell fence 1,344 varas south from the corner with the bearing tree that you found? A. Now, when I got to Mr. Campbell's fence from this north corner and went down south, I had 1,340 varas, and 4 varas further south there was a stone marked 'NW to 1810.' The distance was all right from corner to corner. Q. How far is it from that northwest corner of 1810, as established from the north, to the northwest corner of Dr. Hamilton's land, as the fence now exists? A. From the north corner there, a stone on the north, I went south there; it is 774 varas from one of those corners, and from the other corner it would be 112 varas less; I mean from the live corner. I found at the northwest corner of survey 1811, it would be 774 varas to Dr. Hamilton's land at the fence as it now exists. From the northwest corner of 1810 to the southwest corner of 1810 it is 1,419 varas, and from the northeast corner to the southeast corner it is the same distance as the west line, 1,419 varas. Dr. Hamilton has not got as much as 160 acres of survey 1810 inclosed in his inclosure. He lacks 47 varas on the east and 41 varas on the west. Yes, sir; there is an excess of 17.8 acres in survey No. 1810, and if Dr. Hamilton is entitled to one-half of it he would be entitled to 168.9 varas. In order for him to get the south half of survey 1810, his land would have to begin at a point 709½ varas south from the northeast corner of survey No. 1810."

On cross-examination he testified, in part, as follows:

"Yes, I located the corners I have testified about, that is, Campbell's northeast and northwest corners and Hamilton's southeast and southwest corners, from the four corners I found back east, being the corners of surveys Nos. 1397, 1389, and 1377, and from these corners I located the corners of No. 1810. These surveys are east of 1810. The nearest one is three surveys away from 1810. The way I found the corners of 1810, I started back here east, six surveys, at the corner of 1398, northeast corner, and then run west passing the corners of 1397, 1380 (1389), and 1377, where I found corners. I did not find any other corners as I come west from 1377. I found the northeast corner of 1377, but did not find the northwest corner. Then I continued west another survey and made a corner there myself. Then continued west another survey and made a corner there. Then I run west another survey. I did not find any corner. I did not put down my distance. Then I went to the northwest (N. E.?) corner of 1373 and run west 1,344 varas. That is the way I established the cor-

ners of survey No. 1810; and, in running from the corner that I made and called a corner, there is an excess in survey No. 1810. I run south then to what I termed the southeast corner of 1810. It was 1,419 varas. That brought me to a marked stone. There was nothing else there. The reason I run 1,419 varas here was because I had run those lines up there east on 1398 where there were good corners, and found that to be 1,419 varas. Yes, I made this last surveying this morning, of 1398. Yes, that excess of 75 varas over there on 1398 was what I was testifying about this morning on direct examination, and I base this overplus in survey 1810 on that of 1398. Yes, I established the south boundary line of survey 1810. I first established it by running from the east from the live corners at 1398, and then I established it from the north of 1811. In running from the north of 1811 due south for two surveys, and beginning at the south stone, at the northwest corner of 1811, running the distance of two surveys, would take me 125 varas south of the line of the south side of 1810, I make from the east. Beginning at the north one of the stones at northwest corner of 1811, and run south two surveys, carried me 13 varas south of the line made running from the east."

E. W. Fry, witness for defendant, testified, in part, as follows:

"In surveying the land, I began at the southwest corner of survey 1809, in the middle of the road. I cannot say that it was a corner. It is a supposition, based upon the fact that it is the recognized corner of those land lines. There are no bearings there. Beginning there at southwest corner of 1809, I measured across 1809 and halfway across survey 1810. The distance gave out something like 10 feet south of a fence running east and west. * * * No, sir; I did not run entirely around survey 1810. Beginning at the point in the middle of the road above mentioned, we run north a survey and a half, and then turned east across 1810, and then run south back a survey and half, then west to the place of beginning. Then we went to the northwest corner of survey 1811, which is the southwest corner of 1812. The field notes there call for an elm bearing tree, and I think a hackberry. At that point there is a regular corner there, possibly two of them left. I went to the elm tree. There were no letters on it. However, it had been chopped into. I measured the course and distance to locate the corner of 1811 and 1812. At that point the field notes call to go north on the west line of 1812 47½ varas, crossing a creek. From the corner I found I run this line, and it crossed the creek at 47½ varas. From this corner I measured south across 1811 and halfway across 1810. Yes, there are two rocks at the northwest corner of 1811 and southwest corner of 1812, each having evidences of being put there for corners. I found the rock pile. I do not remember just how far apart these rocks are, but possibly 3 or 4 varas; something like that. Yes, from this corner I ran south across survey 1811 and halfway across 1810. This brought me to within three or four feet of the partition fence between Campbell and Hamilton. I did not run further down that west line, as I had run that before going up to the north of 1811, coming from the south from the middle of the road down there southwest corner of 1809. The middle of the road is the recognized line between those surveys. I have surveyed country there east, west, and north and south, on this T. E. & L. Company land. I did not run clear around survey 1810. I run the west line. I did not run the south line. I run across the survey a survey and a half from the northwest corner of 1811. At the meeting of the two lines I run one from the north and one from the south. From the line I ran, and taking in-

to consideration the T. E. & L. Company land, the way it is surveyed, I could not tell whether or not there was an excess. There is no excess on the west side, and, if the survey is laid off in a square, there is no excess in it. The field notes of this survey show it to be laid off in a square."

Enough of the evidence is given above to show the conflict in the testimony of the two surveyors, upon whose testimony the plaintiff and defendant in the court below, respectively, relied to support the contention advanced by each. As will be seen, there is not a corner in section 1810 fixed by any living object. The two surveyors disagree as to the location of the north line of said survey, and the corners of the south line are not determined by any fixed objects. The appellee, in order to locate a corner of section 1810, began at the northeast corner of section 1398, six miles east, and the appellant for the same purpose began at the northwest corner of section 1811, and also from the southwest corner of 1809. While the judgment merely awards the appellee the south one-half of the section 1810, and without calling for any bearings and without any corner being located on the ground, the judgment proceeds to describe the entire section 1810, beginning at the southwest corner thereof.

We do not believe that the judgment determines the issues involved in the suit, and therefore is ineffectual.

[2] Appellee objects to the consideration of this assignment because the question was not raised in the motion for new trial, and, if this were not a fundamental error, the objection would be sustained. But, since it is fundamental, the objection cannot be sustained.

For the reasons given, the judgment of the trial court is reversed, and the cause is remanded.