## CARTER v. WEBB. (No. 1904.)

(Court of Civil Appeals of Texas. Amarillo. March 22, 1922.)

1. **Boundaries 40(1)—Location of section corners held for the jury.**

Evidence *held* sufficient for submission to jury of issue as to location of section corners.

2. **Adverse possession 115(1) — Whether purchaser of inclosed land acquired title by adverse possession to portion of adjoining owner's land included in inclosure held for jury.**

Whether purchaser of a portion of inclosed land acquired title by adverse possession under the 10-years statute of limitations by possession of a strip of adjoining land included in inclosure with portion so purchased by permitting another to use land for pasturage purposes *held* for jury.

3. **Adverse possession 36—Possession need not be adverse to world, but merely to party who asserts title.**

Possession of land to constitute adverse possession within statute of limitations need not be adverse to the world, but merely to party who asserts title.

4. **Adverse possession 36—Possession of portion of inclosed land by purchaser thereof not less exclusive because cattle of other owners grazed over entire tract.**

Purchaser of a portion of land inclosed by a fence could gain title by adverse possession to such portion by permitting another to use land as a pasture though cattle of other owners grazed over the entire tract; such fact not rendering purchaser's possession of his part any less exclusive as to third parties.

5. **Adverse possession 25—Purchaser could gain title by adverse possession by possession of person whom he permitted to use land as pasture.**

Purchaser of land could gain title by adverse possession by possession of another person whom he permitted to use the land as a pasture; such possession being sufficient to give owner notice.

6. **Boundaries 42—Verdict and judgment should definitely establish location of disputed line with reference to known object.**

In a boundary case the verdict and judgment should definitely fix and establish the location of the line in dispute with reference to some known object then in existence, concerning the identity and locality of which there is no dispute.

7. **Boundaries 42—Verdict fixing section line as given distance from corner, location of which is in dispute, without locating corner by known object invalid for uncertainty.**

In boundary case involving dispute as to location of section line, verdict fixing the line at a given distance from the southwest corner without locating or identifying the corner by some known object then in existence, though the location of such corner was in dispute, *held* invalid for uncertainty.

8. **Boundaries 43—Judgment without aid of verdict, invalid for uncertainty, could not establish location of corner in dispute.**

In a case involving issue as to location of a section line, in which the verdict was invalid for uncertainty, in that it fixed the line at a given distance from a corner, the location of which was in dispute, without locating the corner by some known object, the judgment, without the aid of such verdict, could not establish the corner.

9. **Judgment 256(1)—Must follow verdict.**

The judgment must follow the verdict, and cannot add thereto or vary it.

---

For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**10. Judgment ⊷256(2)—Not entered upon verdict which fails to find on material issue submitted.**

The trial court cannot enter a judgment on a verdict which fails to find on material issue submitted to them for determination.

Appeal from District Court, Donley County; Henry S. Bishop, Judge.

Suit by W. B. Webb against C. C. Carter. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Elliott & Moss, of Memphis, for appellant. A. T. Cole, of Clarendon, for appellee.

HUFF, C. J. This was a suit in form an action of trespass to try title to 440 acres of land out of section 110, block C6, brought by Webb against Carter. The appellant, Carter, by answer pleaded general denial, not guilty, and, further, that he does not claim any part of section 110 unless the same be inclosed within his fenced premises, which he and those under whom he claims have had and held adverse possession by virtue of title to the west one-half of section 12, block C9, beginning at the southwest corner of section No. 12, which is also the northwest corner of section 127, block C9, which point is in the line of fence extending north and south near the center of the line running east and west; thence north with said line of fence 1,900 varas to corner; thence east 950 varas; thence by proper course and distance so as to close. The 3, 5 and 10 years' statute of limitations was also pleaded as a defense. The real purpose of the action was to establish the boundary between section 110 and section 12. The case was submitted upon one special issue to wit:

"Where is the true boundary line between surveys No. 12 and 110?"

The jury returned the following answer:

"To special issue No. 1 we answer, beginning at the southwest corner of section 110, and go east 1,900 varas and establish line between sections 110 and 12."

On this verdict the court entered the following judgment:

"Wherefore the court is of the opinion that the common boundary line between said section 110 in block C6 and the west one-half of section 12 in block C9 is a meridian line through a point 1,900 varas east of a rock, an iron pipe at the near center of the public road, running north from Lelia lake, the same being the southwest corner of section 110 and the northwest corner of section No. 108, and the northeast corner of section 109, and the southwest corner of section No. 111, in block C6. The said boundary line being 21.2 varas east of the fence on the east side of said section No. 110, heretofore claimed as the west boundary of section 12 by defendant C. C. Carter."

[1] There are several assignments and propositions to the effect that the evidence does not support the judgment, and that the trial court should have instructed a verdict for the appellant. It is urged the evidence does not definitely establish the original corners of the sections of land owned by the respective parties, or by the corners as shown by the subsequent corrected surveys. The parties on the trial of the cause both appear to rely upon the corrected surveys as establishing their boundaries. If the corrected surveys change the original location, we find nothing in the record showing that fact. The sections appear to have been patented on the corrected surveys. The corrected field notes call for sandstones at the northwest and southwest corners of section 110. Witnesses testify to seeing rocks at points claimed for those corners, and there is testimony by a surveyor who sought to locate the land that, by running from other accepted corners in surveys, and running course and distance, the corners or rocks would be approximately located at the corners of this survey. It is true the surveyor did not look for other objects called for as bearings for these corners, or find the marks on the rocks called for in the field notes. We think, nevertheless, the evidence was sufficient to carry the case to the jury, and would be sufficient to support a verdict locating the corners at a point where the rocks were found, or at least this court would not be justified in holding that such a verdict would be without evidence to support it. The assignments presenting all the above propositions will therefore be overruled.

[2] The appellant pleaded the 10-year statute of limitation, and by special issue No. 8 requested the trial court to submit whether he and those under whom he claimed have and had peaceable adverse possession of the strip of land in controversy for a period of 10 years before the filing of this suit, using and enjoying the same. This charge was refused. The appellee shows title to 440 acres of section 110, being all of the section except about 200 acres out of the northwest corner of the section; his deed conveying to him the east line or portion of the section. The appellant has title to the west half of section 12. The field notes would seem to make the east line of section 110 the west line of section 12. The two sections, however, are in different blocks, and have their connections from surveys in their respective blocks, each calling for corners apparently marked on the ground. The appellee instituted this action July 1, 1920, to recover a strip of land 21.2 varas wide by 1,900 varas long in the possession of appellant; however, the petition only describes the 440 acres owned by him. This strip of land appellee claimed as being part of section 110, while appellant was

claiming it under his deed as belonging to section 12.

Prior to the appellee's purchase one Rich Bolan owned section 110. The testimony of some of the witnesses shows that while he owned the section, some time about 1890 or 1891, possibly a little later, he fenced the section, setting his fence on the east line; that this fence ran north from a rock then standing at the southeast corner of the section or fence, which appellant attempted to establish as being the rock called for in the field notes and that corner. The fence, the testimony indicates, ran north on a line with this rock. The vendor of appellant, J. T. Edwards, owned section 12 by conveyance dated June 11, 1907. Edwards conveyed the land to Carter the 15th day of September, 1913. The testimony of Edwards is to the effect, when he purchased section 12, that it was inclosed by a fence, and that all he knew about the west line of his section was that he accepted the fence which had been erected by Bolan, and which was there, as the west line; that he claimed title to the west fence; that after he purchased he permitted one Cook to use the half section for pasturage. The testimony of Carter shows that immediately upon his purchase he went into possession and has cultivated and pastured the land, claiming title to the fence as being part of section 12. We think the facts raise the issue of the 10-year statute of limitation, and should have been submitted to the jury. Bruce v. Washington, 80 Tex. 368, 15 S. W. 1104; Jayne v. Hanna (Tex. Civ. App.) 51 S. W. 296; Hand v. Swann, 1 Tex. Civ. App. 241, 21 S. W. 282; Logan v. Meads, 43 Tex. Civ. App. 477, 98 S. W. 210; Houston Oil Co. v. Jones, 109 Tex. 89, 198 S. W. 290; Thompson v. Dutton, 96 Tex. 205, 71 S. W. 544; Brady v. McCuistion (Tex. Civ. App.) 210 S. W. 815.

[3] It appears to be the contention of appellee, because, while Edwards owned the west one-half of section 12, the east half was owned by Cook or some one else, under whom Cook was using the grass for pasturage, therefore there was no visible act of ownership such as gave notice to all persons of an assertion of an adverse and exclusive right to the land. In the first place, to claim land under limitation defendant's possession need not be adverse to the world, but to the plaintiff, who is asserting title. Converse v. Ringer, 6 Tex. Civ. App. 51, 24 S. W. 705; Longley v. Warren, 11 Tex. Civ. App. 269, 33 S. W. 304; Craig v. Cartwright, 65 Tex. 413. The east half of the section belonged to other parties, which was inclosed with appellant's half, under one fence, and all the land being used for pasturage.

[4, 5] The fact that cattle of the other owners or parties using the land grazed over the entire tract did not render appellant's vendor's possession of his part any less exclusive as to third parties. Parker v. Newberry, 83 Tex. 428, 18 S. W. 815; Church v. Waggoner, 78 Tex. 200, 14 S. W. 581; Taliaferro v. Butler, 77 Tex. 578, 14 S. W. 191; Alley v. Bailey (Tex. Civ. App.) 47 S. W. 821. The possession of Cook by permission of Edwards was sufficient to give notice to the owner of section 110 that the land within the inclosure was claimed by Edwards. An inquiry of Cook would have revealed for whom he was holding the land. Ramirez v. Smith, 94 Tex. 184, 59 S. W. 258; Collum v. Sanger Bros., 98 Tex. 162, 82 S. W. 459, 83 S. W. 184. The facts raise the issue of an adverse holding to the owner of section 110 both by Edwards and appellant.

It is also asserted by assignment and propositions that the judgment of the court is not supported by the verdict; that the judgment attempts to locate the lines when the jury failed to do so by their findings, although submitted to them for that purpose.

[6, 7] In a boundary case the verdict and judgment should definitely fix and establish the location of the line in dispute with reference to some known object then in existence concerning the identity and locality of which there is no dispute. The northwest, as well as the southwest, corner of section 110 was in dispute. The verdict is therefore invalid for uncertainty, as it merely fixed the east line at a given distance from the southwest corner, without locating or identifying the corner by some known object then in existence. Farnandes v. Schiermann, 23 Tex. Civ. App. 343, 55 S. W. 378; Reed v. Cavett, 1 Tex. Civ. App. 154, 20 S. W. 837; Jones v. Leath, 32 Tex. 329; Wilhelm v. Baumann, 63 Tex. Civ. App. 146, 133 S. W. 292; Campbell, etc., v. Hamilton (Tex. Civ. App.) 173 S. W. 1012. The location of the southwest corner of section 110 was in dispute. The stones claimed for the corners were not marked as called for in the field notes; the bearings called for in the field notes were not identified or found. The surveyor upon whom appellee relies testified he did not search for them. The testimony at least casts doubt as to the stones found being at the proper place. If the corners of the surveys had been identified, doubtless there would have been no controversy as to the boundary. The verdict of the jury as to the boundary left the parties in the same condition they were before it was rendered. The stone with an iron stake driven in it, which the judgment directs should be the starting point to establish the division line, was not identified by marks, or its position established by the bearings called for in the field notes. It was only located by running course and distance from a corner some 2 or 3 miles away. The iron stake was driven down through this

rock by the surveyor who shortly before the suit surveyed the land for appellee. If the jury had found this rock and iron stake to have been the true southwest corner of section 110, perhaps the verdict would have been sufficiently certain to support the judgment.

[8-10] The judgment, without the aid of the verdict, seeks to establish the southwest corner of section 110 on this rock and iron stake. The judgment must follow the verdict of the jury; it cannot add to or vary the verdict, and a judgment referring to a tract of land as descriptive of the line or corner in controversy is erroneous. Battles v. Barnett (Tex. Civ. App.) 100 S. W. 817; Dillingham v. Smith, 30 Tex. Civ. App. 525, 70 S. W. 791; Burnett v. Harrington, 58 Tex. 359-362; Brient v. Bruce, 5 Tex. Civ. App. 580, 24 S. W. 35. An issue submitted to the jury for their determination, their finding is binding upon the trial court, and the judgment must be based thereon. The trial court cannot enter a judgment upon a verdict which fails to find the material issue when that issue is submitted to them to be determined. Dugger v. Allen (Tex. Civ. App.) 233 S. W. 343.

For the reasons stated, the judgment of the trial court will be reversed, and the cause remanded.