**COOK et al. v. HUTTO et al.**

No. 4061.

Court of Civil Appeals of Texas. El Paso.
April 10, 1941.

Rehearing Denied June 5, 1941.

644

Seale & Wood, of Corpus Christi, Joe Ternus, of Sinton, and M. A. Childers, of San Antonio, for appellants.

W. B. Moss, of Sinton, and Kelso, Locke & King, of San Antonio, for appellees.

PRICE, Chief Justice.

This is an appeal from a judgment of the District Court of San Patricio County. Plaintiffs, H. H. Hutto and others, sued John Gollihar and others, as defendants, for certain tracts of land in San Patricio County. The trial was before a jury, the case submitted on one special issue, and judgment was in favor of the plaintiffs. From the judgment entered defendants have perfected this appeal.

The parties will be here designated as they were in the trial court.

The statement of the nature and result of the suit as made in the brief of defendants (appellants) is conceded by plaintiffs (appellees) to be substantially correct. Hence we shall substantially follow same.

This is a case in which plaintiffs set up the usual plea in trespass to try title and followed same by specific pleas of the three, five and ten year statutes of limitation. Their plea of the ten-year statutes alleges that "they and those whose title they hold have had peaceable and adverse possession of the lands and tenements described in their petition, etc., for more than ten years." No proof was offered in support of their pleas of three and five year limitations. One issue only was submitted to the jury, as follows: "Do you find from a preponderance of the evidence that the plaintiffs, and those under whom they claim, either in person or through tenants, have had and held peaceable and adverse possession of the property in controversy, using, cultivating, or enjoying the same, for any period of ten consecutive years prior to the filing of this suit on September 2, 1939? Answer 'yes' or 'no.'" To this issue the jury answered "yes."

No allegation was made that plaintiffs were claiming as heirs of anyone. Their sole allegation of ownership under the ten-year statutes being that they and those whose title they hold had held peaceable and adverse possession for ten years, etc.

Plaintiffs offered evidence substantially as follows:

That in 1921 when C. V. Jones, who owned some adjacent lots to the lots involved in this litigation, fenced his lots he included in his enclosure the lots involved in this suit; that on October 24, 1923, C. V. Jones deeded his lots to S. Newman, and that Newman went into possession of all property within the enclosure, holding a deed, however, only for the Jones' lots, and holding no deed for the lots involved in this suit; that S. Newman died in 1925; that his wife died in 1937; that Mrs. Newman, either in person or by agents or tenants, adversely held the property from the date of her husband's death to her death in 1937; since the death of Mrs. Newman, plaintiffs, in person or by agent, have held adverse possession of the property.

There was evidence that plaintiffs, or at least some of them, were the heirs of S. Newman and of his wife. As before stated, there was no allegation in the petition of plaintiffs to this effect.

Defendants in their brief assert twelve assignments of error. These assignments are briefed under five propositions raising questions as to the exclusion of testimony, the failure of the court to give a proper definition of the term "adverse possession," the refusal of the court to submit issues on the acknowledgment of defendants' title by plaintiffs during the period of possession claimed by them to support limitation, and that the verdict was not supported by a preponderance of the evidence.

The most serious question is as to the exclusion of the testimony of defendant John Gollihar. Defendants sought to prove by the witness that, acting in his own behalf and on behalf of defendants Cook, Dupree, Skeen and Daffern, about 1924 he had a conversation with Sebe Newman, the father of some of the plaintiffs at least, with reference to the property in controversy, in which, in substance, Newman acknowledged that he did not own the property, and it was finally agreed that if Newman would pay the taxes on the property he should have the use thereof. This testimony was objected to by plaintiffs as being inadmissible by virtue of Article 3716, R.C.S.1925, the "dead man's statute." The objection was sustained, and defendants excepted to the ruling of the court.

In this action under the evidence plaintiffs had a right to tack successive adverse possession, provided there was the requisite privy between such possessions. Article 5516, Vernon's Annotated Civil

Statutes. The privity of an estate referred to in the statute is not privity of title, but privity of possession. Moran v. Moseley, Tex.Civ.App., 164 S.W. 1093; McAnally v. Texas Co., Tex.Civ.App., 32 S.W.2d 947, affirmed 124 Tex. 196, 76 S.W.2d 997.

The case last cited is authority for the proposition that this privity of estate can arise by virtue of descent. From their father plaintiffs acquired no title to this land for the reason that at the time of his death he had acquired no title thereto. His status at best with reference to the property was that of a naked trespasser claiming title to the property. If his surviving wife had continued the adverse possession for the length of time sufficient, in connection with his prior possession, to have acquired title, the property would not have been community property, but her separate property. Bishop v. Lusk, 8 Tex. Civ.App. 30, 27 S.W. 306; Gafford v. Foster, 36 Tex.Civ.App. 56, 81 S.W. 63; Cook v. Houston Oil Co., Tex.Civ.App., 154 S.W. 279; Hawkins v. Stiles, Tex.Civ.App., 158 S.W. 1011.

Under the evidence, after the death of her husband Mrs. Newman continued the adverse possession for a short time in person, and thereafter maintained such possession through agents or tenants. It does not clearly appear whether in connection with this possession while she maintained same she claimed on behalf of herself and in behalf of her children likewise, or claimed the property individually. This we do not believe to be of controlling importance as to the question under consideration.

Under the issue as submitted the jury might reasonably commence the period of adverse possession with the possession of S. Newman and find that such adverse possession continued up until the time the suit was instituted.

The title asserted by plaintiffs was full legal title. The establishment of the cause of action asserted and submitted established a title of this character on their behalf. Article 5513, Vernon's Civil Statutes; Lynch Davidson & Co. v. Beasley, Tex.Civ.App., 128 S.W.2d 877.

Plaintiffs assert title acquired by them either by descent from their mother, or in part from that source; the other interest being acquired by their own adverse possession. This on the assumption that there had elapsed ten years adverse possession prior to the death of the mother.

We are of the opinion that plaintiffs neither sue as heirs of S. Newman nor does the judgment which was rendered, or which might have been rendered, affect them as heirs. For this reason the conditions under which Art. 3716 applies do not exist.

It is true that in a general sense plaintiffs were the heirs of S. Newman. It is likewise true that in the suit they relied upon no title acquired from S. Newman. The judgment entered or the judgment that might have been entered was or would be effective as to any title. But in order for the statute to apply in the litigation, some title derived ·from the deceased's ancestor must be in issue. In this case no title derived from their father was in issue, for he had none.

We have made such search as was practicable under the circumstances for an authoritative precedent under the facts presented here and have found none entirely satisfactory to us. The case of Power v. Jones, Tex.Civ.App., 135 S.W.2d 1054, in this connection has been carefully considered. In that case the administrator asserted the title which was vested in the deceased at the time of her death. It is true that title had not matured in the deceased at the time the transaction sought to be proved took place. The testimony admitted as to the transaction was held inadmissible but harmless, because a disregard thereof was attributed to the trial judge. The judgment of the trial court was in favor of the limitation claimant. From the facts as stated in the opinion it might be that even though the admissibility of the testimony were granted, there still existed a conflict in the testimony the determination of which was the exclusive province of the trial court. There was an application for writ of error in this case which was dismissed by the Supreme Court on the ground that the judgment was correct.

We do not believe the holding here conflicts with the holding of the Eastland Court in the case just discussed. There, a title was asserted vested in the deceased at the time of her death; here, title was never vested in deceased.

We are not unmindful of the far-reaching importance of this question, and

have endeavored to give same careful consideration. We have borne in mind that the statute in question should be confined to its terms and not applied by construction to a situation not included in its terms. Roberts v. Yarboro & Wimberly, 41 Tex. 449; Holland v. Nimitz, 111 Tex. 419, 232 S.W. 298, 239 S.W. 185; Lassiter v. Bouche, Tex.Com.App., 14 S.W.2d 808; Clemens v. Perry, Tex.Civ.App., 29 S.W.2d 529; Ladd v. Anderson, Tex.Civ.App., 89 S.W.2d 1041.

We hold that the testimony was admissible, and the exclusion thereof constitutes reversible error. In our opinion the plaintiffs neither sued as heirs of S. Newman nor could they be affected as such by the judgment in the cause.

Defendants offered to prove that the result of the agreement and transaction between John Gollihar and S. Newman was communicated by him to defendants Dupree, Cook, Skeen and Daffern. This offer of proof was made through the witness Gollihar that he had communicated same to said parties, and by the testimony of Mr. and Mrs. Wilkie, Dupree, Cook and Mrs. Skeen. In connection with the tender of the testimony, counsel for defendants made the following statement: "Your Honor, we would like to offer all of that testimony before the jury, and we except to the ruling of the Court excluding this testimony, on the ground that they are seeking to show by the testimony that they rely upon that their claim of limitation began even prior to the possession of Sebe Newman; on the further ground that they have not set up in their pleadings that they are claiming as heirs of Sebe Newman, and because this is an agreement which, if admitted with reference to the taxes, explains the reason that the defendants did not pay the taxes and why the Newmans were paying the taxes."

Now, clearly, this testimony was not admissible to show that in truth and in fact the witness John Gollihar made the agreement he said he did with said Newman. If offered for that purpose it was clearly inadmissible. Article 3716 does not seem to have application to testimony relating to a communication from defendant Gollihar to his codefendants. It is claimed here that it would have explained the failure of the defendants to pay the taxes assessed against the property. Payment or nonpayment of taxes may have an evidentiary bearing in this case, but it is not an issue here. Gollihar's testimony, if believed, would afford a reasonable explanation of why defendants failed to pay the taxes, if they did fail. Plaintiffs undertook to establish title by their own positive acts and not by admissions of the defendants. We think there was no error in the exclusion of the testimony.

In connection with the issue submitted the court gave the following definition: "You are further instructed that 'adverse possession,' as the term is used in this charge, is an actual and visible appropriation of the land commenced and continued under a claim of right inconsistent with and hostile to the claim of another."

It will be observed that this is the definition given by Article 5515, R.S.1925.

Defendants objected to the court's charge on the ground it did not contain a proper, full and complete definition of adverse possession, stating them separately in the exception; that they had theretofore tendered to the court a proper definition of the term. The charge requested was as follows: "The possession must be so open, visible, notorious, distinct and hostile as to raise the presumption of notice that the rights of the true owner are invaded intentionally and with the purpose of asserting a claim of title adverse to his, so patent that the owner could not be deceived, and such that if he remains in ignorance thereof it is his own fault."

Defendants' assignments of error relating to these matters are two: In substance, that the definition given by the court was not a proper, full and complete definition of adverse possession; that the court erred in refusing the definition tendered by defendants by way of request. These assignments are supported by this proposition: "The court erred in failing to give a proper definition to the term 'adverse possession,' after the defect in the definition given had been called to the attention of the court by objection to the charge, and by a definition timely requested by appellants."

Neither the assignment nor the proposition thereunder points out wherein the definition given by the trial court was in any way incomplete or defective; nor is such defect pointed out in the defendants' argument under their assignment. The definition given was the statutory definition. We think no error is shown. Logan v.

Meade, 43 Tex.Civ.App. 477, 98 S.W. 210; Houston Oil Co. v. Stepney, Tex.Civ.App., 187 S.W. 1078; Brown v. Fisher, Tex.Civ. App., 193 S.W. 357; White v. Haynes, Tex.Civ.App., 60 S.W.2d 275; Broughton v. Humble Oil & Ref. Co., Tex.Civ.App., 105 S.W.2d 480.

 Error is assigned on the failure of the court to submit proper issues on the question of acknowledgment of defendants' title by plaintiffs during the period of possession claimed by them to support title by limitation, such material issue in the case being called to the attention of the court by exception to the charge and by requested issues.

It cannot be said that the court's charge failed to submit this issue. Unquestionably the issue submitted, by the language in which it is couched and the definition in connection therewith, required the continuous and consistent claim of title to be asserted by plaintiffs. It is unquestionably the law that one relying on adverse possession for title must, as to the exploited claim of title, at all times keep his flag flying. This element was submitted in special issue No. 1.

 In view of the fact that we have held there is error in this case necessitating a new trial, we shall not consider whether the assignments are sufficient to present error in this matter, but will consider from the standpoint as to whether defendants were entitled to have the issues requested or issues suggested by the request.

Defendants' requests were as follows:

"1. Do you find from a preponderance of the evidence that N. R. Newman, at any time within the said period of ten years, if any, acknowledged or recognized by his words or act that defendants were the owners of the land involved in this controversy?

"2. Do you find from a preponderance of the evidence that Tom Newman, at any time within the said period of ten years, if any, acknowledged or recognized by his word or act that defendants were the owners of the land involved in this controversy?

"3. Do you find from a preponderance of the evidence that the plaintiffs, at any time within the said period of ten years, if any, acknowledged or recognized by their word or acts that defendants were the owners of the land involved in this controversy?"

The term "ten years," as used in the issues, referred of course to any period of ten consecutive years prior to the filing of the suit on September 2, 1939. This was the phraseology of the issue submitted by the court. Even so, the requested issues are somewhat indefinite and confusing. The evidence tended to show a greater period than ten years elapsed during the time plaintiffs claimed to hold adverse possession of the land involved. If issue or issues of the character suggested should be requested, the clear drafting of such issue or issues is somewhat difficult.

The evidence was sufficient we think to raise the issues suggested by the requests.

We think that, if requested in proper form by defendants, issues of this nature should be submitted. The matter seems to be authoritatively settled by the case of Cuniff et al. v. Bernard Corporation, Tex. Civ.App., 94 S.W.2d 577. The Supreme Court refused the writ of error applied for in this case.

 We shall not attempt to suggest the form in which the request for these issues should be cast. As to the issues requested, there was perhaps no error in their refusal. It might be added that request No. 3 includes 1 and 2. In drafting the issues it should be borne in mind that acknowledgments after ten years' adverse possession are not material.

 There is no merit in defendants' proposition that the verdict fails to find support in the evidence, and same is overruled.

For the error indicated it is ordered that the cause be reversed and remanded.

On Motion for Rehearing.

Careful consideration has been given to the able motion for rehearing filed herein by the appellees. However, we still adhere to the views expressed in the original opinion. In the light of the motion it is thought proper to clarify the opinion somewhat.

The evidence was sufficient to raise the theory that Mrs. Newman after the death of her husband continued the alleged adverse possession for the benefit of herself and for the benefit of her children. The discussion appearing in the opinion as to the nature of the title acquired by a surviving wife or husband continuing an uncompleted adverse possession was for the purpose of illustrating the nature of the

right of an estate acquired by the survivor. To the proper determination of this case it is unnecessary to determine whether the interest alleged to have been acquired be considered as community property or otherwise.

We will further briefly state our reasons for the disposition made of this case.

 Suppose one should acquire by inheritance an option to purchase land. He exercises the option and acquires title to the land. The land is not inherited. Could it be said, in an action involving the title so acquired, that the judgment therein rendered would be for or against him as an heir of his ancestor? In case of a privity of estate arising by descent from a prior adverse possessor and a subsequent one, a rather tenuous option is acquired to seek to obtain the title to the land through a continuation of the adverse possession. As heir there is no obligation to continue same; there is no legal right to have the owner of the title refrain from ending such peaceable possession. If the adverse possession is ripened into title by the heir of the prior possessor, such title is by purchase and not by inheritance. In an action involving the validity of the title so acquired the holder neither relies upon the title acquired by descent nor is he affected by the judgment rendered as an heir.

 We might further state that in arriving at our conclusion we were in no wise influenced by the fact that plaintiffs' petition did not specifically allege that they were heirs of S. Newman. For a party to rely on a title cast by descent, we do not deem it necessary that there be an averment that he sues as heir—this especially is true where the action is in trespass to try title.

The case of Dominguez v. Garcia, Tex. Civ.App., 36 S.W.2d 299, affirmed by Commission of Appeals, 53 S.W.2d 459, was not mentioned in the original opinion. In that case Garcia relied upon a limitation title perfected by the possession of his mother. We infer that title was alleged to be perfected before her death and passed to Garcia by descent. It was there held that he was incompetent to testify as to transactions as to the adverse possession of his mother. It was held that the testimony was incompetent. In the decision of the Commission of Appeals the correctness of this ruling is in no way questioned. In fact, we think, as the judgment of the

Court of Appeals sending the case back for another trial was affirmed, that there was an implied approval of the ruling on the evidence.

The distinction is the same between the instant case and that case; as between the instant case and the case of Power v. Jones, Tex.Civ.App., 135 S.W.2d 1054, which is discussed in the original opinion.

Appellees claim in part at least as the heirs of their mother. In fact, if title they have, it is through her. The transaction sought to be proved was not with her. There can be little question but that as to the interest claimed through their mother the testimony was admissible. King v. Morris, Tex.Com.App., 1 S.W.2d 605; Theophilakos v. Costello, Tex.Civ.App., 54 S. W.2d 203; Armstrong et ux. v. Marshall, Tex.Civ.App., 146 S.W.2d 250.

Furthermore, we believe that appellees' privity of possession was through their mother, in part by her voluntary act in claiming for them after the death of the father and in part by descent.

The motion for rehearing is overruled.