### J. R. Hedges v. Elizabeth Williams et al.

Decided June 15, 1901.

**1.—Evidence—Transactions with Decedent—Wife as Witness.**

Where plaintiff, as relict and sole heir of her deceased husband, sued to recover the proceeds of an insurance policy on his life, which defendant had collected under an assignment of the policy to him by the deceased to secure a debt due on account, defendant's wife was, as well as himself, an incompetent witness under the statute (Revised Statutes, article 2302) to testify as to the status of the account between defendant and the deceased at the time of the latter's death, since the defendant represented in the suit the community interest of both himself and the wife. Following Simpson v. Brotherton, 62 Texas, 171.

**2.—Same—Account Book.**

The court below also properly excluded from evidence a book showing the transactions and accounts between deceased and defendant, where all the entries in the book were made by defendant's wife.

Appeal from Marion.   Tried below before Hon. J. M. Talbot.

*R. R. Taylor,* for appellant.

*P. A. Turner,* for appellee Mrs. Elizabeth Williams.

*Maurice E. Locke,* for appellee Mutual Insurance Company.

KNIGHT, Special Associate Justice.—The appellee the Mutual Life Insurance Company, of New York, under date of March 20, 1890, issued its policy of insurance No. 395,957 upon the life of one John Williams, whereby it promised "to pay   *   *   *   unto John Williams, *   *   *   his executors, administrators, or assigns, $3500 upon acceptance of satisfactory proofs of the death of said John Williams,   *   *   * during the continuance of this policy."

Thereafter, on March 24, 1890, said John Williams executed in duplicate a written assignment to appellant of said policy, at the same time delivering to him one copy of the assignment, with the policy, and sending the other copy of the assignment to appellee insurance company. The policy was taken out for the purpose of securing appellant in the payment of a debt owing to him by the said John Williams, and appellant paid the first and all subsequent premiums accruing on said policy. Said premiums with interest amounted in the aggregate to the sum of $1634.05, but the amount of the original debt, to secure which the policy was taken out, was a matter of sharp dispute.

On the 18th day of March, 1899, Williams died, and the appellant promptly furnished proofs of death to the insurance company, and thereafter, on May 24, 1899, the insurance company paid him $3500, the full amount of the policy.

Appellee Mrs. Williams gave the insurance company no notice that she claimed any interest in the policy, although advised of appellant's efforts to collect the same.   In June thereafter appellant paid Mrs. Williams $50, in consideration of which he took from her a purported relinquishment of all her claims under said policy.   At the time this alleged relinquishment was obtained the policy had been paid to appellant, but this fact was concealed from the appellee; on the contrary she was told at the time the relinquishment was being sought, and before its execution, the policy had not been paid, and she was further told that the only object in asking her to execute the relinquishment was that it might be of assistance in collecting the policy, and that the $50 paid was all she would be entitled to, even if the policy should be collected.

On April 2, 1900, appellee Mrs. Williams, as surviving relict and sole

heir of John Williams, who died intestate, instituted this suit against both appellant and appellee insurance company, alleging in substance that Hedges had no insurable interest in Williams' life, and that the insurance company was aware of that fact, and that its payment to him was wrongful and did not discharge its liability under the policy; that for the same reasons appellant had no right to receive and retain said money; that the purported relinquishment of all her claims under the policy was void in that it was obtained by fraud. The appellee insurance company, answered, admitting the payment to appellant of the amount of the policy, and setting up the assignment to appellant by John Williams, and the want of notice of any claim of Mrs. Williams under said policy. The appellant answered, setting up the assignment from John Williams to him, and also the purported relinquishment from Mrs. Williams of her claims under the policy, and alleging an indebtedness of $1236.66 due him by John Williams, in addition to the amount of premiums advanced by him, the total amount claimed aggregating a sum largely in excess of the amount claimed under and collected on the policy.

It was admitted by appellee Mrs. Williams that appellant had paid all premiums on the policy, amounting with interest to $1634.05, and that there was an indebtedness of $86 due by her deceased husband to Hedges at the time the policy was taken out, and that the said sum with interest was still unpaid, and the evidence shows there was no further indebtedness.

On the above facts the learned trial judge very properly instructed the jury to return a verdict for the appellee insurance company, but submitted to the jury the issues between appellant and appellee Williams. The jury accepted Mrs. Williams' statement of the matter, and gave her a verdict against Hedges for $1808.98, on which verdict judgment was rendered for the insurance company and in favor of appellee Mrs. Williams against appellant for said sum of $1808.98, from which judgment the appellant alone appeals to this court.

Appellant's first purported assignment of error fails utterly to comply with the requirement of article 1018 of the Revised Statutes or the rules governing appeals to this court, and can not be considered by us.

The appellant's third assignment of error complains of the action of the court in excluding the testimony of appellant and his wife as to the status of the account between appellant and John Williams at the time of the latter's death, and in refusing to admit in evidence a book containing said account, all the entries in said book having been made by appellant's said wife. Article 2302, Revised Statutes, provides as follows: "In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal

representatives of a decedent arising out of any transaction with such decedent."

The facts of this case place it clearly under the operation of the last paragraph of the foregoing provision of the statute, and manifestly the testimony of the appellant in relation to the transactions between him and appellee's intestate was inadmissible. As the appellant was representing the community interest of himself and wife in this suit, she was as much a party thereto and her interest as much affected as if her name had appeared among the parties to the suit. Her testimony was no more admissible than that of appellant himself. Simpson v. Brotherton, 62 Texas, 171.

Neither the testimony of appellant nor his wife being admissible, was the book kept by the wife and containing a record of the identical transactions concerning which she was incompetent to testify, admissible? We think not. In our opinion the book offered in evidence was just as obnoxious to the objection urged as was the testimony of appellant and his wife. It was an attempt to accomplish in an indirect way that which was not permitted to be done directly. We do not think the court erred in excluding the evidence.

We have carefully considered the appellant's remaining assignments of error, and in our opinion none of them are well taken. There was no error in the court's refusal to give the special charges asked by appellant, as they are fully covered by the general charge. The verdict of the jury is abundantly supported by the evidence, and having failed to find any error in the record, the judgment is affirmed.

*Affirmed.*