**OLSCHEWSKE v. PRIESTER et ux.** *
(No. 703—4263.)

(Commission of Appeals of Texas, Section A.
Oct. 28, 1925.)

1. **Trial** ⬦85—**Objection to question as calling for testimony as to transaction with decedent should be overruled if any of testimony called for was proper.**

If any of testimony called for by question objected to as calling for testimony concerning transaction with deceased person in contravention of Rev. St. 1911, art. 3690, was proper, objection should have been overruled.

2. **Bills and notes** ⬦474—**Authenticity of signature admitted by plea of forgery by raising amount of note.**

Plea of forgery by raising amount of note admitted authenticity of signature; necessary import of non est factum being to restrict plea to alterations after signing.

3. **Bills and notes** ⬦539—**Fact of signature, assumed in language of special issue, admitted throughout trial and established by verdict answering issue in affirmative.**

Signature of note, assumed without objection in language of special issue as to whether it was raised in amount by payee without maker's consent, *held* admitted throughout trial,

and established as fact by verdict answering issue in affirmative.

**4. Witnesses ⊚⇒174—Reference to admitted fact, set up by party as basis of defense, not testimony "against" such party.**

Mere reference to admitted fact, affirmatively set up by party as necessary basis of defense, is testimony "against" such party within Rev. St. 1911, art. 3690, prohibiting such testimony as to transaction with deceased person, especially as such inhibition must be strictly construed and not extended to evidence not plainly within its range in source or subject-matter.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Against.]

**5. Witnesses ⊚⇒164(6)—Question to payee as to whether he altered note after signature by maker, since deceased, held not improper.**

Under Rev. St. 1911, art. 3688, payee charged with having fraudulently raised amount of note should have been permitted to answer question whether he made any alterations therein after maker, since deceased, signed it, as against objection that question called for testimony as to transaction with decedent in contravention of article 3690.

**6. Constitutional law ⊚⇒305, 328—Requirements as to due process and open courts read into every valid statute and its terms conformed thereto.**

Const. art. 1, §§ 13, 19, as to due process, open courts, and remedy by due course of law for injury done, must be read into every valid statute and its terms conformed thereto, and court's pronouncement without hearing is coram non judice, notwithstanding contra legislative fiat, which, therefore, will not be presumed.

**7. Constitutional law ⊚⇒311, 328—Witnesses ⊚⇒164(6)—Payee held not precluded from testifying that he did not alter note after signature by maker, since deceased.**

In view of Const. art. 1, §§ 13, 19, as to due process, open courts, and remedy by due course of law for injury done, payee charged with having raised amount of note, on which he seeks recovery from maker's estate, cannot be prevented from testifying that he did not alter note after maker signed it on ground that such testimony related to transaction with decedent in contravention of Rev. St. 1911, art. 3690, especially in view of article 1906, subd. 8, permitting defense requiring him to prove truth of note's text and obligation.

**8. Witnesses ⊚⇒164(6)—Statute prohibiting testimony as to transaction with decedent not construed to prevent payee from denying alleged alteration of decedent's note.**

Rev. St. 1911, art. 3690, prohibiting testimony as to transaction with decedent, will not be interpreted as precluding one seeking recovery on note from maker's estate from testifying that he did not alter note after maker signed it, as charged by administratrix, in view of Bill of Rights and statutes permitting suit on note, and providing for non est factum and its result, as different application of statute would defeat its manifest purpose of placing

parties on equal footing and convert it into instrument of oppression.

**9. Appeal and error ⊚⇒926(5)—Question to witness given more reasonable of two possible interpretations, in absence of objection to form or supposed ambiguity.**

Where no objection was made to form or supposed ambiguity of question to payee as to whether he or any one else ever made any alterations "in that note" after maker, since deceased, signed it, will be interpreted as referring to paper which it was admitted that decedent signed, rather than to note for amount to which payee was alleged to have raised it, so as to render it objectionable as calling for testimony that decedent signed note for latter amount, in contravention of Rev. St. 1911, art. 3690, prohibiting testimony as to transactions with decedent.

**10. Witnesses ⊚⇒164(6)—Question to payee as to whether he altered note after signature by maker, since deceased, held not objectionable, even if answer necessarily would have amounted to statement that decedent signed note for amount to which payee was alleged to have raised it.**

Even if payee's answer to question whether he or any one else altered note after maker, since deceased, signed it would necessarily have amounted to statement that maker signed note for amount to which payee was alleged to have raised that signed by decedent, Rev. St. 1911, art. 3690, prohibiting testimony as to transaction with decedent, would not have prevented payee from denying such charge, as answer would have been merely a denial of averment that he or some one else made alterations in note, thereby throwing burden of proof on him.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Suit by Simon Priester and wife against William H. Olschewske, in which Mrs. Priester, on her husband's death, filed an amended petition continuing the suit as individual, devisee, and administratrix, and defendant filed reconvention. Judgment for plaintiff was affirmed by Court of Civil Appeals (264 S. W. 517), and defendant brings error. Reversed and remanded.

Wm. Masterson and Andrews, Streetman, Logue & Mobley, all of Houston, for plaintiff in error.

Amerman & Sears, of Houston, for defendants in error.

Statement of the Case.

NICKELS, J. On June 19, 1920, Simon Priester and wife owed one Hegar $22,500; payment of the debt being secured by deed of trust lien on various tracts of land. The lien was in process of foreclosure. Olschewske (their son-in-law) procured a loan of $22,500 from Dan Japhet to take up the Hegar debt; (at least in part) to effectuate the loan, and to secure Japhet, Priester et ux. conveyed the lands to Olschewske, and he,

in turn, executed a deed in trust to H. J. Dannenbaum, trustee—all on June 19, 1920. Olschewske signed the note for $22,500 to Japhet.

"Family trouble" resulted in divorce of Olschewske and his wife in June, 1922, and thereafter steps were taken to procure reconveyance from him, which failed, and this suit resulted. Priester and wife filed the suit August 23, 1922, alleging that their deed to Olschewske was really in trust to secure the Japhet debt, but that Olschewske "now claims the property as his own." Recovery of title and possession was prayed. Priester died testate in September, 1922, Mrs. Priester becoming his sole devisee and administratrix without bond. October 12, 1922, she filed an amended petition continuing the suit in her individual, devisee, and administratrix capacities. February 5, 1923, Olschewske filed an amended answer and a reconvention, in which he admitted the deed from Priester and wife was in trust, but, he claimed, it was intended to and did secure payment of all indebtedness he then had or should thereafter have against Priester, as well as security for the Japhet debt, and, consequently, a note for $9,400 executed to him by Priester October 13, 1920, and other claims were thus secured; he sought recovery on the note. Thereafter the suit became one largely of accounting between the parties.

By supplemental petition filed thereafter on February 5, 1923, Mrs. Priester interposed a verified plea in words as follows:

"Plaintiff denies that the note for $9,400 set up in defendant's answer, for which a recovery is sought, was executed by Simon Priester or by his authority.

"Plaintiff alleges that the note shows on its face that it has been falsely and fraudulently altered in a material particular in this, that the note shows on its face to have been originally made out for $400, and that without the knowledge or consent of Simon Priester it has been fraudulently raised to $9,400, thereby rendering the same a forgery in violation of the laws of this state, and rendering the note void.

"Plaintiff alleges in this connection that from her knowledge of her husband's affairs and his dealings with the defendant, who was then his son-in-law, and based upon the records kept by Simon Priester, deceased, and evidence, furnished Simon Priester from time to time during his lifetime by the defendant, that on or about the date of the alleged note, Simon Priester was temporarily indebted to the defendant in the sum of $400, and if any note were made by Simon Priester had he executed and left with defendant a note signed and dated, showing the amount of $400, together with the date and the signature; that said note was otherwise blank; that said note sued on shows on its face that the figure '9' has been inserted ahead of the '$400' as written by Simon Priester, and the body of the note has been filled in, in words and figures, to represent a note for $9,400, instead of for $400 as originally written; that other changes are apparent

on the face of the note, so as to attempt to make the writing and the ink as originally written, and as altered, to correspond; that such material alterations are such as to entirely destroy the validity of said note, and to render it a forgery."

Before the note was introduced in evidence, plaintiff introduced testimony of the following import: Mrs. Olschewske said she was present and joined in the deed of trust to Dannenbaum "to secure a debt to Dan Japhet." Dannenbaum's firm (Messrs. Dannenbaum, Ammerman & Sears) were counsellors to Priester and wife (and Mrs. Olschewske) in 1922, etc. Mr. Sears testified that he talked with Olschewske (about the time of the conveyance from Priester et ux.), and that Olschewske then said "that he was going to have" the land "in his own name" in order to protect himself on the Japhet loan. Judge Ammerman testified to a conversation with Olschewske, in which he said "at first" that "he had taken the deed from Simon Priester and wife in order to secure himself in the signing of a deed of trust to Dan Japhet, and also a note which he had signed to Japhet for $22,500," and that he would reconvey the property providing that he (Ammerman) would secure him a release from Japhet so he would not be personally responsible to Japhet, and, later, "Olschewske did refuse to reconvey this property upon my undertaking to get a release from Mr. Japhet," and (still later) "Olschewske then claimed that he had some more claims in addition to the Japhet note." Of these claims Judge Ammerman then said:

"I tried perhaps on a dozen occasions to get him to give me these, but he never did give them to me. There was always something that delayed the getting, and he never did give them until they were filed in this suit."

It was made to appear that there existed some bad feeling between Priester's son and Olschewske, and "family trouble" had resulted in a divorce. The son testified to and somewhat emphasized the point that after his father's death he called on Olschewske "several times for a statement of any indebtedness or claims he had against" Simon Priester, " 'but he always made excuses and prayed for time,' saying he would give me a statement 'just as soon as he had time to get it up,' and that he (Olschewske) did not know how he and Simon stood—he would have to look into that," etc. The son also testified that Olschewske had given him certain papers pertaining to the $22,500 lien, and that "he did not claim any other indebtedness against my father at that time."

The note as introduced in evidence was sent up with the record. Its appearance is such as to indicate that some of its wording and figures were changed, "traced over," etc., at some time; and after it was introduced

in evidence some expert witnesses pointed out these indicia of change.

The proffered testimony discussed in the opinion was offered after the above described testimony of Mrs. Olschewske, Priester's son, Mr. Sears, and Judge Ammerman was given.

In response to a special issue the jury found that the note "had been raised by the defendant from $400 to $9,400 without the consent of Simon Priester." Recovery on the note was denied in the judgment. The judgment was affirmed by the Court of Civil Appeals. 264 S. W. 517.

## Opinion.

Olschewske, while testifying in his own behalf, was asked: "Did you or anyone else ever make any alterations in that note after Mr. Priester signed it?" Objection was made that the question called for testimony concerning a transaction with a deceased person, and its answer, therefore, would contravene the terms of article 3690, R. S. 1911. The objection was sustained. If answer had been permitted, Olschewske would have said: "No, sir; none whatever." The trial court's action in this respect is here for review.

[1-4] The objection made and sustained was not to the form of the question, but related solely to the inhibition of the statute. If any part of the testimony called for was proper, the objection should have been overruled. Wells v. Hobbs, 57 Tex. Civ. App. 375, 122 S. W. 451, 453, and cases there cited. Authenticity of the signature itself was admitted, or it proved itself, since the necessary import of the non est factum restricted the plea to alterations after signing. Mrs. Priester could not defend on forgery by alteration without admitting the signature; for the one presupposes the other. The fact of signature was, without objection, assumed in the language of the special issue, and this signifies it was admitted throughout the trial; the verdict establishes it as a fact. There was and is no controversy about it. The inhibition of the statute (where it applies) is that a party shall not "testify against" the other. "Against" signifies discord or conflict, and not harmony. If one party says a certain fact exists, and the other affirms existence of the same fact, they are not juxtaposed; they are "with" each other. A mere reference to a fact which admittedly exists, and which has been affirmatively set up by one party as a necessary basis of a defense, cannot be regarded as testimony "against" that party. Especially is this true in view of the sound reasoning in cases which hold that the inhibition must be given a strict construction, and that it will not be extended to evidence which does not (in source or subject-matter) plainly come within its range. Roberts v. Yarboro, 41 Tex. 449; Martin v. McAdams, 87 Tex. 225,

27 S. W. 255; Markham v. Carothers, 47 Tex. 25; Newton v. Newton, 77 Tex. 508, 14 S. W. 157; Dodson v. Watson (Tex. Civ. App.) 225 S. W. 586.

[5] The matter is to be determined, therefore, as if Olschewske had been asked whether he made alterations in the note on or after October 13, 1920. When thus viewed there is no warrant for the application of article 3690. The exact issue advanced by pleading and proof was that Olschewske, after he got the note, fraudulently raised it in amount, Mrs. Priester asserting that he did. If she was right, manifestly this was done in the absence of the testator, and at a time and under circumstances when and where he could take no part. The alteration, therefore, could not have amounted "to any transaction with or statement by the testator." If she was wrong, then there was no "transaction" whatever—with the testator or with or by anybody else. The question related to Olschewske's own personal act, expressly charged to him by his antagonist, and the court should have allowed him to answer. Article 3688, R. S. 1911; Potter v. Wheat, 53 Tex. 401; Henderson v. Davis (Tex. Civ. App.) 191 S. W. 358; Buckler v. Kneezell (Tex. Civ. App.) 91 S. W. 367; Russell v. Beckert (Tex. Civ. App.) 195 S. W. 607; Huff v. Powell, 48 Tex. Civ. App. 582, 107 S.W. 364; Williams v. Neill (Tex. Civ. App.) 152 S. W. 693; Dodson v. Watson (Tex. Civ. App.) 225 S. W. 586; Killfoil v. Moore (Tex. Civ. App.) 45 S. W. 1024, and cases cited in the last preceding paragraph.

[6, 7] Even if the question as propounded to the witness should not be regarded as having the limitations suggested, article 3690 could not rightly prevent Olschewske from denying the forgery charged to him. Under the conditions which circumstanced him, he could not deny the felony or protect his right of property without saying he did not alter the note. A concept of justice which excludes the right to say that much is a most curious thing. Included in the liberty of the citizen is the right to due process. The imperative mandate is that no person shall be deprived of life, liberty, or property without due process of law, and that "all courts shall be open," affording whomsoever will "remedy by due course of law" for "an injury done him." Constitution, art. 1, §§ 13 and 19. This must be read into every valid statute, and its terms conformed. The court must hear before it condemns, else its pronouncement is coram non judice. That is the irreducible minimum of due process. Contra legislative fiat would be wholly impotent, and, being so, it will not be presumed. If Priester made the note, the debt became a part of Olschewske's "goods" and property. Failure to pay the debt when due was "an injury done him," for the redress of which the courts are commanded to stand open. For all practical purposes, the note is the sole

evidence of the debt and of the injury. The Constitution and statutes permit suit for its collection. Another statute (article 1906, subd. 8, R. S. 1911), permits a defense which requires the injured party to prove, aliunde, truth of the note's text and obligation. Thus far the Legislature permits Olschewske to sue and aver his right. It then requires him to prove his allegation, and to disprove that of his adversary, as a condition precedent to recovery. But when he offers the only existent proof on the essential fact, another statute (article 3690), it is said, operates to exclude it. Thereby the court is closed, and is never opened to afford "remedy by due course of law."

[8] But article 3690 was not intended to accomplish that result. We cannot ascribe any such purpose to the Legislature, even in respect to an isolated case. The article must be read as if it were context of the other statutes (permitting suit on the note and providing for non est factum, and its result), as, also, of the Bill of Rights. When this is done the competency of the testimony is obvious. A different application of the statute under the conditions here would defeat its manifest purpose and convert it into an instrument of oppression. Its purpose is stated in Parks v. Caudle, 58 Tex. 216, 221:

"The statute had in view, primarily, a transaction between parties, one of whom had since died, and whose heirs or representatives were engaged in a suit with the survivor. As to such a transaction neither party was allowed to testify. The survivor should not, because the mouth of the other party to the transaction was forever closed. But the heir or representative, if perchance he knew aught of the facts, although it was not a transaction with him, was also forbidden to testify about it; for to allow him to do so, would be to give him the advantage over one whose mouth the statute had closed."

And in Johnson v. Lockhart, 16 Tex. Civ. App. 32, 40 S. W. 640, its purpose is said to be to achieve the placing of the parties "upon equal footing."

But here the once closed "mouth of the other party" has been opened under non est factum, per statutory terms; Mrs. Priester is allowed to put into the record (and thereby to defeat Olschewske unless he can disprove them) these statements:

"Plaintiff alleges in this connection that from her knowledge of her husband's affairs and his dealings with the defendant, who was then his son-in-law, and based upon the records kept by Simon Priester, deceased, and evidence furnished Simon Priester from time to time during his lifetime by the defendant, that on or about the date of the alleged note, Simon Priester was temporarily indebted to the defendant in the sum of $400, and if any note were made by Simon Priester had he executed and left with defendant a note signed and dated, showing the amount of $400, together with the date and the signature."

Thus article 1906 permits the administratrix to place before the court and jury information which came directly from the testator. And it gives to that information an effect much greater than it would have as mere testimony, for the article so operates as to permit the information and, then, to give it a force sufficient to place the burden of its disproof upon her adversary. One advantage thus having been given her, another is sought in the text of the other statute. And unless Olschewske be allowed to deny the alterations, article 3690 operates to give Mrs. Priester a determinative advantage, and thus prevents, instead of preserving, the "equal footing" spoken of in Johnson v. Lockhart. Whatever justice there may be in the statute inheres in the fact that, where it applies at all, its inhibition is mutual. That mutuality is completely destroyed—at least by indirection—if the proffered testimony be inadmissible. The purpose ascribed in Parks v. Caudle, supra, excludes the applicability of the statute here.

The cases urged against the competency of the evidence may be sufficiently distinguished, we believe, by grouping and describing them in the following manner:

(a) Those in which it was sought to show payments (or absence of payments) to or by persons since deceased: Johnson v. Lockhart, 16 Tex. Civ. App. 32, 40 S. W. 640 (suit on a note; testimony that a note owned by the intestate had not been paid); Swan v. Price (Tex. Civ. App.) 162 S. W. 998 (suit for money had by deceased; testimony by plaintiff that her deceased agent had not paid her the money received by him for her); Spencer v. Schell, 107 Tex. 44, 173 S. W. 867 (suit on note; testimony that payments were made to deceased); Abbott v. Stiff (Tex. Civ. App.) 81 S. W. 562 (testimony by plaintiff "that he never received the money" claimed to have been paid him by deceased "on the notes" sued on, it having been shown otherwise that deceased had paid him more money than the amount of the notes); Zinn v. Farmer (Tex. Civ. App.) 243 S. W. 523, 524 (suit on a note; testimony "that one day the said" deceased "destroyed the note" in question); Perez v. Maverick (Tex. Civ. App.) 202 S. W. 199 (testimony by plaintiff that "the balance of the note," made by deceased, "had never been paid"); Hedges v. Williams, 26 Tex. Civ. App. 551, 64 S. W. 76, 78 (proceeds of policy on life of Williams had been collected by Hedges as assignee and Mrs. Williams sued Hedges et al. for proceeds, or part thereof; Hedges claimed that Williams owed him the amount of the proceeds; the objectionable evidence was the testimony of Hedges' wife to show "the status of the account between" Hedges and Williams and a "book of account" made by Mrs. Hedges and purporting to show "the identical transactions" about which she proposed testimony); McCoy's Estate v. Brown (Tex. Civ. App.)

268 S. W. 241 (suit on a contract with deceased; "necessarily the payment of money * * * must have been made by deceased to appellee, and therefore there was a transaction with him; * * *" testimony by appellee as to a memorandum made by him as to what was due him by deceased was a clear evasion of the terms of the statute).

(b) Will contests, in which it was sought to show statements or conversations by, to, or with, or in the presence of, testates (or the absence of such statements, etc.): Holland v. Nimitz, 111 Tex. 419, 232 S. W. 298, 239 S. W. 185 (testimony that the witness did not "say anything to his mother with reference to making a will"); Adams v. Adams (Tex. Civ. App.) 253 S. W. 605, 609 (testimony by a contesting child showing details of a conversation between testator and his wife—chief beneficiary—in the presence of the witness, and also about the extent of the wife's "association with testator").

(c) McCampbell v. Henderson, 50 Tex. 613. Suit was brought by Henderson against Love on a contract which was alleged to have been broken by Love by his "taking possession of the stock forcibly and driving it out of the country"; Love died during the pendency of the suit, and it was continued by the McCampbell and the Love heirs; the objectionable testimony is thus described by the court:

McCampbell testified "to the number of brood mares he had received from Love; as to the time the stock was taken from him by Love; that they were driven off by Love without his consent; and that no such conversation as that related by witnesses Timon and Carson, in relation to the rescission of the contract between Love and the plaintiff ever occurred at any time after the contract sued on was made."

[9, 10] At least two general distinguishing features inhere in the cases just referred to and in the present case. None of those cases involved a situation produced by the interposition of the plea of non est factum under such circumstances as that the only existent evidence to overcome the plea is that of a party to the suit. In the next place, it is apparent that the testimony involved in each of those cases related directly to a statement to or by, or an act done by or in the presence of, the person subsequently deceased; and they can have no application, therefore, to a situation where the act inquired about of necessity took place, if it occurred at all, out of the presence of the person since deceased. It seems to us that there is a marked difference between testimony that the living party did not himself do a certain thing within a given time (such as was the import of the testimony here),

and testimony that he did not say something to or in the presence of the deceased, or that the deceased did not say something to him, or that the deceased did (or did not do) some act (such as was the significance of the testimony in review in the cases cited). This appears to be recognized, and taken into account, in the argument made against the admissibility of the testimony. For it is claimed Olschewske's answer, of necessity, would have amounted to a statement that "Mr. Priester signed that note for the sum of $9,400." That claim involves a double process: (a) Olschewske's testimony is converted into this narrative form: "After Mr. Priester signed that note, neither I nor anybody else made any alterations in it; none whatever." (b) The deduction that the words "that note," thus used, meant "that note for the sum of 9,400." One of the processes, at least, is that of strained construction. The record clearly indicates "that note," as used, referred to the paper which it was admitted Mr. Priester signed. In the light of the pleading and the testimony, the court or the jury could not have reasonably taken it in any other sense. No objection was made to the form of the question, or to its supposed ambiguity, and the other and more reasonable interpretation therefore should be given its language. Besides, if counsel's deduction were well based, Olschewske's answer, in the form assigned it, would have been no more than an exact denial of Mrs. Priester's averment, which threw the burden on Olschewske (and thereby gave him the right to deny), for her plea may as reasonably be stated in these terms: "After Mr. Priester signed that note either Olschewske or somebody else made alterations in it." The law, having made it imperative that Olschewske either deny this allegation or admit his felony and abandon his property, gave him the right of denial along with the requirement.

There are other assignments presenting matters of evidence which are immaterial in view of the disposition to be made of the case, and which have not, therefore, been considered.

We recommend a reversal of the judgments of the district court and of the Court of Civil Appeals, and a remand.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the questions discussed in its opinion.