## CLEMENS v. PERRY.

### No. 2414.

Court of Civil Appeals of Texas. El Paso.
May 1, 1930.

Rehearing Denied June 12, 1930.

Terrell, Davis, McMillan & Hall, of San Antonio, for appellant.

L. J. Gittinger and Dielmann & Forster, all of San Antonio, for appellee.

WALTHALL, J.

Appellee, Charles Perry, brought this suit against appellant, E. W. Clemens, administrator of Ernst Knoke, deceased, to recover upon a claim against said estate, aggregating in amount the sum of $2,700.

Briefly stated, after alleging the qualification of E. W. Clemens in 1928, as administrator of said estate, the petition alleges, in substance, the following:

That about July 16, 1921, Ernst Knoke, now deceased, entered into a contract with appellee whereby he obligated himself to pay appellee a specified sum equal to 5 per cent. of the property seized by the United States government through the office of the Alien Property Custodian, acting under the provisions of the "Trading with the Enemy Act" (50 USCA Appendix); that, acting under said contract, appellee was to perform certain services in connection with the recovery and release of said property so seized, and services connected with other business matters of Ernst Knoke; that to state the figures to be paid for such services Knoke executed "a series of promissory notes dated July 16th, 1921, of which notes there remains a balance on the principal thereof of $2,700.00; that by reason of said contract and the execution and delivery of said notes the said Ernst Knoke became bound, and obligated himself to pay to plaintiff the sum of money in said notes specified, towit, the sum of $2,700.00"; that on the 14th day of September, 1923, Knoke executed and delivered to plaintiff a certain letter or order addressed to "Mr. Herman Clemens, Austin, Texas, or who may be my administrator at the time," the English translation set out in exhibit and attached to and made a part of the petition, in which Knoke acknowledged a performance on appellee's part of the contract and directed the payment of the 5 per cent. commission, alleging the balance due to be $2,700; that said sum is now due and payable, and that appellee is the owner of the claim; that Knoke died in 1926, testate; that the will was probated in Comal county, Tex., on the qualification of the administrator in 1928; alleged duly the presentation of the claim to the administrator and its rejection; that all of Knoke's property, at the time of the making of the contract sued on, was and now is in the custody and under the control of the Alien Property Custodian; that the claim as represented by the notes is in the sum of $2,700, expressed in the several notes stated, payable to appellee on demand, and that the letter or order of September 14, 1923, "was given in confirmation, recognition and renewal of the obligation represented by said notes for the aggregate sum of $2,700.00, which is due and unpaid; the prayer is that appellee's claim be established as a claim against the estate."

The exhibit made a part of the petition and also introduced in evidence is in substance as follows:

"Piedras Negras, Sept. 14, 1923.

"Mr. Herman Clemens, Austin, Texas, or who may be my administrator at the time.

"Dear Mr. Clemens:

"I hereby acknowledge that my representative, Mr. Charles Perry, San Antonio, Texas, has in every respect fulfilled all of his contracted obligations toward me with reference to the release of my property held by the Alien Property Custodian, in Washington, and I request that you pay to Charles Perry, or to his heirs, the five percent commission guaranteed to him on our contract, on all my property seized by the U. S. Government in Washington, on such assets as are to be released, and on any other valuables without any other order from me and unconditionally.

"In the event I should continue to need the services of Mr. Perry in this matter, he is to receive for such work no additional compensation, except that he is to be reimbursed in accordance with our contract, for cash expenditures, for trips, attorneys' fees, telegrams,.etc.

"I expressly stipulate that beginning today Mr. Perry is not tied to any particular place of residence, such as San Antonio, and that it is left to him to carry on his activities according to his own judgment whether in the United States, Mexico, or elsewhere.

"[Signed] Respectfully,

"Ernst Knoke."

A verified statement of Charles Perry follows the above to the effect that he was and still is the owner of the stated claim against Knoke of 5 per cent. commission on the total amount of the estate held by the Alien Property Custodian as appears from the above, that.the claim is just, and that all legal offsets, payments, and credits, known to him to exist, have been allowed.

The claim was duly presented to the administrator and rejected.

The record shows that during the time in which said notes were executed and said letter of September 14, 1923, was executed, and since said times, Knoke resided in Piedras Negras, Mexico; "that said notes evidencing said obligation are dated July 16th, 1921, and are payable on demand"; that on or about July 1, 1925, appellee made a trip to Mexico, and while there found Knoke to be ill mentally and physically, and of unsound mind, and that his condition remained unchanged until his death in 1926; that by reason of said facts the statute of limitation did not run; that, should appellee be mistaken in his allegation as to limitation not running, then said letter and order signed by Knoke constituted an original and new obligation and given in full consideration of said services contracted for and performed.

Appellant, Clemens, administrator of the estate of Ernst Knoke, with will attached, answered by demurrers, general and special, general denial, and special answer, in substance:

(1) That appellee, Charles Perry, is now and at all times mentioned a subject of the German Empire, as also was Ernst Knoke, and at no time was either a citizen of the United States.

(2) That under the provisions of the "Trading With The Enemy Act," section 20 as added by Winslow Act § 2 (50 USCA Appendix § 20) it is provided that no fee or compensation in excess of 3 per cent. of the value of the money or property held or returned by the Alien Property Custodian shall be valid for services rendered in connection therewith, and that appellant's cause of action asserting a contract for 5 per cent. of the value of all money and property held by the Alien Property Custodian is invalid.

(3) That on July 16, 1921, the "Trading With The Enemy Act" made no provision for the return or release to a subject of the German Empire of any part of the money or property seized under said act. That, because Knoke was at all times a subject of the German Empire, appellee was unable to render any services to Knoke to procure the release for himself of any property from the Alien Property Custodian, and said contract is unilateral and of no benefit. That it was not until the amendment of the "Trading With The Enemy Act" by the enactment of the so-called Winslow Bill on or about the 4th of March, 1923 (50 USCA §§ 9, 20–24), that any provision was made for the return to a subject of the German Empire of any part or portion of any property or money held by the Alien Property Custodian, and such return was limited to the sum of $10,000, therefore the maximum amount of such recovery of the commission of 5 per cent. of such return would be $500, but the Winslow Bill, section 20 (50 USCA Appendix § 20), provides for a maximum fee of 3 per cent. of the value of the property or money delivered. That, because of the provisions of the law as stated in effect at the time of the execution of said notes on July 16, 1921, there was a failure of consideration, as appellee was unable to render service to Knoke.

(4) Bar of the four-year statute of limitations (Rev. St. 1925, art. 5527) as to the notes.

(5) Denial that the Knoke letter of September 14, 1923, constitutes an original and new obligation, and that there was any promise therein sufficient to charge Knoke or his estate with any obligation.

(6) Denies the allegation that the letter of September 14, 1923, constitutes an original and new obligation, it being merely to compensate for services to secure the release of property held by the Alien Property Custodian, and did not include other services, and is for that reason void under section 20 of the "Trading With The Enemy Act" as added by Winslow Act, and is void for the further reason that it provides for a fee in excess of 3 per cent. as fixed by said section 20 of said act, and is void as an assignment of an interest in such money and property in violation of paragraphs (e) and (f) of section 9, of said act (50 USCA Appendix § 9(e)(f).

The answer is verified by Clemens, administrator.

The trial court overruled appellee's exceptions; the case being tried to the court, the evidence was heard and judgment was entered for appellee establishing his claim in the sum of $2,700 as a claim against the estate

of Knoke, deceased, pending in county court of Comal county.

Appellant has perfected this appeal from the judgment rendered.

The trial court filed findings of fact and conclusions of law.

The findings are lengthy; and, abbreviated, they are substantially as follows:

The first three findings state the pending administration of the estate of Knoke in Comal county, of which no question is made, and appellee's suit to establish his claim as in the above pleadings.

(4) The findings state that on July 16, 1921, Knoke entered into a written contract with appellee, Perry, at Piedras Negras, Mexico, to collect and secure the release of a claim to inheritance from the estate of George Knoke and Emile Knoke, deceased, then in the custody of the Alien Property Custodian, which contract provided for a commission of 5 per cent. on all moneys recovered through appellee's assistance, as well as other valuables, and provided for "other services and other commissions." On the same day Ernst Knoke gave appellee other notes aggregating $2,700. The notes were payable on demand. Appellee is the owner and holder of said notes.

(5) On September 14, 1923, Ernst Knoke executed the written acknowledgment at Piedras Negras, stated above, that Perry had "fulfilled all of his contractual obligations with reference to the release of his property held by the Alien Property Custodian, and directed the payment to plaintiff (appellee) of the commission guaranteed him by contract on such assets as are to be released, or on any other valuables." Said order was executed in duplicate by Knoke in the presence of appellee, who received one copy, and mailed the other copy to Herman Clemens at Austin, Tex., on October 4, 1923, together with a check from Knoke for $500, payable to appellee representing 5 per cent. commission on $10,000, which had then been released to Knoke by the Alien Property Custodian and had been paid to Herman Clemens. In return for the payment of said check for $500, appellee returned to Ernst Knoke a $500 note, being one of the notes executed by Ernst Knoke on July 16, 1921, but not one of the notes sued on. There is still due and payable to appellee by Ernst Knoke the sum of $2,700, represented by appellee's claim.

(6) This finding is substantially the same as in his pleading and stated above as to appellee's visit to Knoke in 1925, his former acquaintance with Knoke, and his observation as to Knoke's mental condition that he was then insane.

(7) Appellee saw Knoke in January, 1926, and his mental condition was then the same as in 1925. Knoke died at Piedras Negras,

Mexico, on February 13, 1926, testate, and was buried at New Braunfels, Tex.

(8) Knoke's will was filed for record in Comal county shortly after his death, but, on account of difficulty of making proof of the will, no administration of his estate was had on his estate until July, 1928, when appellant qualified as administrator with the will annexed.

(9) The sum of $10,000 was returned to Ernst Knoke in 1923; no further money or property was returned to him prior to his death; in December, 1928, the Alien Property Custodian turned over additional money and property to appellant administrator.

(10) "That said money or other property was not paid, conveyed, transferred, assigned or delivered under the Trading With The Enemy Act to plaintiff, Charles Perry, in the performance of his contract with Ernst Knoke."

Perry, in the performance of his contract with Ernst Knoke, made numerous trips to places named in Mexico and other places named; consulted the German consul at places named, made reports, secured the return of $8,000 in notes, attended to other matters stated, in connection with said contract, conducted correspondence with Knoke, Herman Clemens, and others, etc., between July 16, 1921, and September 14, 1923, and rendered other services since the last above date, for which no claim is made.

The trial court concluded as matter of law:

(1) Appellee's claim is a valid claim against the estate for $2,700.

(2) The claim was duly presented to the administrator and by him rejected.

(3) The letter of September 14, 1923, to "Herman Clemens, or who may be my administrator at the time," was given in confirmation, recognition, and renewal of the obligation represented by the notes for the aggregate sum of $2,700, and fixed the time of payment of said obligation to the time when the property of Knoke was to be released by the Alien Property Custodian, which occurred in December, 1928.

(4) Ernst Knoke was insane on July 15, 1925.

(5) Appellee's claim is not barred by the statute of limitations.

(6) The sections of the Trading with the Enemy Act have no application to appellee's claim.

(7) Appellee's claim is based on a valid contract, and there is no failure of consideration for said contract or notes.

## Opinion.

Appellee brought this suit upon a claim against the estate of Ernst Knoke, evidenced by a series of obligations in the form of drafts dated July 16, 1921, aggregating in amount

the sum of $2,700, made payable upon demand, purporting to have been executed by Ernst Knoke at Piedras Negras, Mexico. Attached to the claim and made a part of it was the letter dated September 14, 1923, from Ernst Knoke to Herman Clemens. The claim as stated was presented to and rejected by the administrator September 13, 1928.

In the ninth paragraph of his petition appellee alleged: "That said letter or order, dated September 14th, 1923, was given in confirmation, recognition and renewal of the obligation represented by said notes for the aggregate sum of $2,700.00."

Upon the trial the above referred to letter was presented to appellee to prove its execution and delivery. Over objection to the admissions of appellee's answers to questions submitted to him as being inhibited by article 3716 of our Statute, appellee was permitted to state: "Mr. Ernst Knoke signed this document you hand me, dated September 14th, 1923. That is the signature of Mr. Knoke on that letter. This is not the only copy of that identical letter that I ever saw. I saw one more copy. He gave it to me. I saw it in Piedras Negras. That letter was delivered to me by himself. The other copy of that letter was delivered to me on date of the letter."

In reply to the question: "How did these notes come into your possession?" to which appellee answered: "He (referring to Ernst Knoke) gave them to me," appellee was further permitted to testify: "Under that contract I did everything Ernst Knoke wanted me to do."

The objections to the above questions and answers were preserved in bills of exceptions, and by motion to strike same from the record.

■ While our courts have uniformly held that public policy demands the strict enforcement of article 3716 in the interest of justice and the protection of estates from spoliation, it must not be extended beyond the intent and purpose of the statute. An examination of appellee's answer discloses that no plea of non est factum, or other pleading, was filed presenting the issue of the execution and delivery of either the notes or the letter. The general denial required only that the notes and the letter be tendered in evidence. That was done. They each proved themselves. There was then no controversy as to the execution of the notes or the letter, or the contents of the letter. The inhibition of article 3716 is that "neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator," etc. The issues between the parties, whether of law or fact, are made by their pleadings. The testimony of the witness, to be objectionable, must be "against the other," and as to a "transaction with the testator." As said by Judge Nickels in Olschewske v. Priester (Tex.

Com. App.) 276 S. W. 647, 650: " 'Against' signifies discord, or conflict, and not harmony. If one party says a certain fact exists, and the other affirms existence of the same fact, they are not juxtaposed; they are 'with' each other. A mere reference to a fact which admittedly exists, and which has been affirmatively set up by one party as a necessary basis of a defense, cannot be regarded as testimony 'against' that party."

■■ The inhibition of the statute must be given a strict construction, and will not be extended to evidence which does not come within its range. See, also, Roberts v. Yarboro, 41 Tex. 449; Martin v. McAdams, 87 Tex. 225, 27 S. W. 255. We think in the instant case, to make the admitted evidence objectionable, and for that reason the case reversible, appellant must have in some way in his pleading put the notes and the letter, or the contents thereof, at issue, otherwise the statements of Perry would not be considered as "against the other," the testator, and for the reason that the testator is not silent as to the content of the letter, but in his lifetime has spoken in his letter, and thus he has put himself and Perry upon an equal footing as to what he there said. Appellant refers us to Bright v. Briscoe (Tex. Civ. App.) 193 S. W. 156, and Barnes v. Barnes (Tex. Civ. App.) 261 S. W. 485. The cases are distinguishable from the instant case. The first-cited case alleged that the deceased, Bright, in his lifetime, had orally agreed with appellee, Briscoe, to cancel the indebtedness of appellee to him. The matter there was not, as here, upon the admissibility of testimony inhibited by the statute. In the second case, so far as applicable here, there was a sworn plea that T. W. Barnes, the deceased, did not execute the note sued on, thus putting at issue the execution of the note. Briefly stated, the Texarkana court held that J. A. Barnes, appellant, to whom the note was made payable, could not answer through Blankenship, the witness, what J. A. Barnes himself could not; that is, the witness could not state what he heard Barnes say about the note. We think we need not discuss the statement made by Perry as to his observation of the mental condition of Knoke, as we regard the letter to be a sufficient acknowledgment of the justness of the claim, made subsequent to the time the notes became due, to take the claim out of the bar of the statute.

Answers of Perry to question asked, and his observations as to the mental condition of Knoke, are wholly immaterial. Had it been necessary to establish Knoke's insanity to avoid the bar of the statute, the statements of Perry as to Knoke's mental condition would not have been immaterial, and his statements would have been error. But other facts, not questioned, we think are properly shown to avoid the limitation of the statute.

Appellant submits error in admitting in evidence the drafts, on the ground of variance, the petition designating them as notes payable on demand.

Had the suit been brought solely on the notes, the point submitted would be sustained. But the suit is not brought on the notes but on a contract; the amount alleged to be due being evidenced by the aggregate sum of the notes. Again, the suit is based on a letter requesting the payment to appellee as a commission of 5 per cent. guaranteed to him, on the contract pleaded, on the recovery by appellee of the promisor's property without in any way referring to the notes, the amount payable being made to appear by calculation. From the trial court's conclusions of law we understand the court's judgment, establishing the claim, is based on the contract sued on. The point presented is not without difficulty of solution, but we prefer, in passing upon the question of reversible error, to abide by the view taken by the trial court.

Appellant, by the third and fourth propositions, submits that the claim sought to be enforced was from its inception illegal and void because made in violation of the Trading with the Enemy Act. The trial court made no findings of fact in reference to the contract being in violation of the act; nor any finding of any fact that would tend to make the act applicable to the case under consideration. The facts recited in appellant's brief, and upon which he relies, do not, in our judgment, show that either Perry or Knoke were enemies under section 2 of the act (50 USCA Appendix § 2), defining the word "enemy" as used in the act to be an individual of any nationality resident within the territory of any nation with which the United States is at war, or resident outside of the United States and doing business within such territory. The trial court in the sixth conclusion of law said that the sections of the Trading with the Enemy Act, relied upon by appellant, had no application to appellee's claim, and we are disposed, in the absence of any finding to the contrary, to concur in that conclusion.

The fee contracted for, and for which appellee sues, exceeds the fee of 3 per cent. of the value of the money and property returned by the Alien Property Custodian.

The trial court in the tenth finding found that the money or property was not paid, conveyed, transferred, assigned, or delivered under the Trading with the Enemy Act to appellee as agent, attorney, or representative of Knoke; also found that Perry rendered additional service to Knoke since September, 14, 1923. If the evidence offered on the trial did not disclose that Perry and Knoke were enemies, as the word "enemy" is defined in the Trading with the Enemy Act, the trial court was necessarily not in error in his finding of fact and conclusion of law. We may not conclude that either Perry or Knoke was an "enemy" because they were citizens of Germany. To be a citizen of Germany does not make them an enemy under the definition section 2 under the act (50 USCA Appendix § 2). If we consider the making of the contract and the execution of drafts and the letter as evidence of "paid, conveyed, transferred, assigned, or delivered under this Act to any agent, attorney at law or in fact," etc., denounced under section 20 of the Act (50 USCA Appendix § 20), such acts of Perry and Knoke, they were not enemies under the act, nor were they "resident within the territory of any nation with which the United States is at war, or resident outside of the United States and doing business within such territory"; that is, doing business in the war territory.

We concur in the above finding and conclusion of the trial court. We think we may not conclude that Knoke was an enemy because the Alien Property Custodian thought proper to take charge of his property. The evidence should be here to show such facts as to what he did and the territory in which his acts were committed. We were not at war with Mexico, and Piedras Negras is shown to be in Mexico. We think also that the transaction between Perry and Knoke is not such "doing business" as contemplated by the act.

We have concluded that under the facts disclosed by the record the four-year statute of limitations did not bar the appellee's claim.

Finding no reversible error, the case is affirmed.